872 P.2d 840

Kenneth E. ROMERO, as personal representative of the estate of Eloy R. Romero, deceased, Victoria Romero, individually, and Helen Romero, individually and as surviving spouse of Eloy E. Romero, Plaintiffs–Petitioners,

v.

Ernest F. BYERS and Lilly A. Abraham, Defendants–Respondents.

Kenneth E. ROMERO, personal representative of the estate of Eloy Romero, deceased, Victoria Romero, individually, and Helen Romero, individually and as surviving spouse of Eloy E. Romero, Petitioners–Appellants,

v.

Ernest F. BYERS and Lilly A. Abraham, Respondents–Appellees.

Marina M. SEARS, individually and as personal representative of the estate of Jeffrey Sears, deceased, Plaintiff,

v.

NISSAN MOTOR COMPANY, LTD., and Nissan Motor Corporation in USA, Defendants.

Nos. 20441, 20640 and 20794.

Supreme Court of New Mexico.

March 16, 1994.

The Revo Law Firm, M. Terrence Revo, Allan E. Knighten, Kim E. Kaufman, Albuquerque, for petitioners in No. 20441.

Miller, Stratvert, Torgerson & Schlenker, P.A., Alice Tomlinson Lorenz, Nancy Augustus, Albuquerque, for respondents in No. 20441.

William H. Carpenter, Michael B. Browde, M.E. Occhialino, Albuquerque, for amicus curiae NM Trial Lawyers Assoc. in No. 20441.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Benjamin Silva, Jr., Margaret Lewis Meister, George R. McFall, Albuquerque, for amicus curiae NM Defense Lawyers Assoc. in No. 20441.

The Revo Law Firm, M. Terrence Revo, Allan E. Knighten, Kim E. Kaufman, Albuquerque, for appellants in No. 20640.

Miller, Stratvert, Torgerson & Schlenker, P.A., Alice Tomlinson Lorenz, Nancy Augustus, Albuquerque, for appellees in No. 20640.

Walz, Wallin & Associates, Dennis K. Wallin, Terry M. Word, P.C., Terry M. Word,

**424**

Kristina Bogardus, Albuquerque, for plaintiff in No. 20794.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., R.E. Thompson, C.A. Armgardt, Margaret Lewis Meister, Albuquerque, for defendants in No. 20794.

Butt, Thornton & Baehr, P.C., Paul L. Butt, Emily A. Franke, Albuquerque, for amicus curiae The Products Liability Advisory Council in No. 20794.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Tracey E. McGee, Charles K. Purcell, Andrew G. Schultz, Albuquerque, for amicus curiae Ass'n of Commerce & Industry of New Mexico in No. 20794.

## OPINION

FRANCHINI, Justice.

This is a consolidated appeal arising from our grant of certiorari (No. 20,441), and acceptance of a related question certified from the Court of Appeals (No. 20,640), in the case of *Romero v. Byers;* and our acceptance of two questions certified to us from the United States District Court, District of New Mexico, in *Sears v. Nissan* (No. 20,794).

In *Romero,* we consider whether New Mexico should recognize a claim for loss of spousal consortium. We hold that the time has come for New Mexico to recognize that claim. On certiorari in No. 20,441, we reverse the Court of Appeals' holding that the surviving spouse could not recover damages for loss of consortium in her own right.

With regard to the related question certified from the Court of Appeals, the trial court, in ruling on a motion in limine, found that loss of consortium damages may not be awarded for spousal loss of consortium under the New Mexico Wrongful Death Act, NMSA 1978, Sections 41–2–1 to 2–4 (Repl. Pamp.1989) ("Act"). We affirm the trial court's grant of the motion in limine. The loss of consortium claim is a separate cause of action to be brought by the spouse. We note that Mrs. Romero is now deceased and hold that the action may continue through her personal representative.

In the first question from *Sears,* we consider two issues: First, whether the Act and Uniform Jury Instruction SCRA 1986, 13–1830 (Repl.Pamp.1991) permit the award of damages for the non-pecuniary value of the decedent's life itself. The other issue is whether expert testimony by an economist is admissible to establish such a value. We hold that the value of life itself is compensable under our Act. Whether or not expert testimony is admitted for the purpose of proving this value is a matter best left to the rules of evidence of the applicable court.

The second question in *Sears,* regarding the loss to minor children from the wrongful death of a parent, also raises two issues: what is the proper measure of damages, and whether a claim for such recovery is possible under the present New Mexico law on loss of consortium. In response to the first issue, we hold that loss of guidance and counseling by a minor child is a pecuniary injury under the Act. A jury is free to consider the "loss to the beneficiaries of expected benefits that have a monetary value" in awarding fair and just damages. The jury may also consider guidance and counseling as part of the "monetary worth of the life of the deceased." As to the second issue, SCRA 13–1830 does not bar recovery.

I

The *Romero* case arises out of an auto collision causing injuries subsequently resulting in the death of Eloy Romero. The personal representative of Romero's estate, his surviving spouse, Helen Romero ("Mrs. Romero"), and their daughter, filed an action seeking damages against the driver and owner of the other vehicle involved in the accident. The complaint included a count in which the spouse, Mrs. Romero, personally sought damages for loss of consortium and household services. The trial court dismissed that count, and the Court of Appeals summarily affirmed. We granted certiorari for the purpose of answering the question of whether a claim should be recognized for loss of spousal consortium.

### Loss of Consortium

In the last three decades, this Court has had two occasions to consider whether to

allow such a common-law action. In 1963, we ruled that wives have no common-law claim to consortium. *Roseberry v. Starkovitch*, 73 N.M. 211, 387 P.2d 321 (1963). Twenty-two years later, relying on *Roseberry*, we held that neither spouse may have a claim for loss of consortium as a result of the negligent injury of a spouse. *Tondre v. Thurmond–Hollis–Thurmond, Inc.*, 103 N.M. 292, 293, 706 P.2d 156, 157 (1985). In *Roseberry*, the Court noted five justifications for not recognizing the common-law cause of action. Those justifications no longer bear the same validity today. In the first justification, we reasoned that, "It is readily apparent that the majority [of jurisdictions] adhere to the rule denying the wife a recovery." *Roseberry*, 73 N.M. at 214, 387 P.2d at 324. Indeed that was the case at that time. Since that time, however, there has been an evolution of the law across the country. New Mexico is now the only state whose common law bars actions for spousal consortium.[1]

■ In the second justification, we were concerned because of "the uncertain and indefinite nature of a wife's claim for ... consortium." *Roseberry*, 73 N.M. at 218, 387 P.2d at 326. Ironically, *Black's* cites *Roseberry* in its definition of "consortium": "Conjugal fellowship of husband and wife, and the right of each to the company, society, cooperation, affection, and aid of the other in every conjugal relation." *Black's Law Dictionary* 309 (6th ed. 1990) (citing *Roseberry*, 73 N.M. at 211, 387 P.2d at 322). *Black's* goes on to state that "[l]oss of 'consortium' consists of several elements, encompassing not only material services but such intangi-

bles as society, guidance, companionship, and sexual relations." *Id.* Viewed from the perspective of this and other courts' more recent cases analyzing the nature of non-physical harms, consortium no longer suffers from lack of clarity. Loss of consortium is simply the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another.

■ The third justification relied upon the "logic and reasoning" of New Mexico precedent and other authorities. *Roseberry*, 73 N.M. at 218, 387 P.2d at 326–27. While New Mexico tort law was not well-developed when *Roseberry* was written, there is now a basis for incorporating the claim for negligently caused loss of spousal consortium into the fabric of New Mexico common law. The core issue is one of duty: Does a negligent actor owe a duty not only to the spouse whom the actor physically injures, but also to the other spouse who thereby suffers the loss of consortium and the accompanying emotional distress? In a series of New Mexico cases culminating in *Solon v. WEK Drilling Co.*, 113 N.M. 566, 829 P.2d 645 (1992), this Court set out the test for determining whether a duty is owed to a plaintiff.

In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care *toward that person* ....

Duty and foreseeability have been closely integrated concepts in tort law since the court in [*Palsgraf*] stated the issue of foreseeability in terms of duty. If it is found that a plaintiff, and injury to that

---

1. A well written and researched amicus brief by the New Mexico Trial Lawyers Association documents, in its Appendix A, that New Mexico is the only state whose common law bars actions for spousal consortium and that every jurisdiction cited by our Court in *Roseberry* as denying a wife's right of consortium has reversed its position. Among other western states, eight recognize a common law claim: Alaska, *Schreiner v. Fruit*, 519 P.2d 462 (Alaska 1974); Arizona, *City of Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803 (1972), *overruling Jeune v. Del E. Webb Constr. Co.*, 77 Ariz. 226, 269 P.2d 723 (1954); California, *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974), *overruling West v. City of San Diego*, 54 Cal.2d 469, 6 Cal.Rptr. 289, 353 P.2d 929 (1960),

and *Deshotel v. Atchison, T. & S.F. Ry. Co.*, 50 Cal.2d 664, 328 P.2d 449 (1958); Hawaii, *Yamamoto v. Premier Ins. Co.*, 4 Haw.App. 429, 668 P.2d 42 (1983); Idaho, *Nichols v. Sonneman*, 91 Idaho 199, 418 P.2d 562 (1966); Montana, *Bain v. Gleason*, 223 Mont. 442, 726 P.2d 1153 (1986); Nevada, *General Elec. Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972); Washington, *Lundgren v. Whitney's, Inc.*, 94 Wash.2d 91, 614 P.2d 1272 (1980), *overruling Ash v. S.S. Mullen, Inc.*, 43 Wash.2d 345, 261 P.2d 118 (1953). Four states recognize a claim by statute: Colorado, Colo. Rev.Stat. § 14–2–209 (1989); Kansas, Kan.Stat. Ann. § 23–205 (1988); Oklahoma, Okla.Stat.Ann. tit. 43, § 214 (West 1990); Oregon, Or.Rev.Stat. § 108.010 (1989).

426

plaintiff, were foreseeable, then a duty is owed *to that plaintiff* by the defendant. *Solon*, 113 N.M. at 569, 829 P.2d at 648 (quoting *Ramirez v. Armstrong*, 100 N.M. 538, 541, 673 P.2d 822, 825 (1983)) (emphasis added by *Solon*).

In determining duty, it must be determined that the injured party was a foreseeable plaintiff—that he was within the zone of danger created by [the tortfeasor's] actions; in other words, to whom was the duty owed?

... A duty to an individual is closely intertwined with the foreseeability of injury to *that individual* resulting from an activity conducted with less than reasonable care by the alleged tort-feasor.

*Id.* (quoting *Calkins v. Cox Estates*, 110 N.M. 59, 61–62, 792 P.2d 36, 38–39 (1990)) (emphasis in original). Application of this modern test in this case demonstrates that post-*Roseberry* New Mexico common law imposes a duty upon the defendant toward the surviving spouse, Mrs. Romero, who is thus entitled to damages for emotional distress resulting from loss of spousal consortium.

■ In the fourth justification, we feared "the possibilities opened for double recovery." *Roseberry*, 73 N.M. at 218, 387 P.2d at 27. To recognize a spouse's right to damages for consortium will unduly neither complicate matters nor lead to double recovery. The consortium right is for the emotional distress that a spouse suffers because of the loss of the spouse's society. Just as a spouse's pain and suffering is separate property, *Russell v. Russell*, 106 N.M. 133, 136, 740 P.2d 127, 130 (Ct.App.1987), so too recovery by a spouse for emotional suffering due to loss of consortium is separate property. *E.g., Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex.1978). The modern consortium claim does not encompass the claim for loss of household services and therefore recovery for loss of consortium will not duplicate damages recovered for the community's lost household services. This justification is no longer of concern.

The fifth justification was that "the legislature has not seen fit to speak on the subject." *Roseberry*, 73 N.M. at 218, 387 P.2d at 327. Such reasoning has not precluded this Court

from ruling on other important common-law issues, *see Torrance County Mental Health Program, Inc. v. New Mexico Health & Env't Dep't*, 113 N.M. 593, 598, 830 P.2d 145, 150 (1992) ("[T]he legislature simply failed to express its will on this subject."), and the legislature is free to act if they deem this a statutory issue. The courts, however, have been the primary instrument for change in the common law. *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669, 676 (Cal.1974). Our failure or refusal to act for these reasons would be, in essence, an abdication of our responsibility for the state and development of the common law.

■ Not one of the five justifications that were valid in *Roseberry* remains valid today. This provides ample reason for the rejection of *Roseberry* and *Tondre* and, it remains only to examine the doctrine of *stare decisis*. While the doctrine serves the values of uniformity, predictability, and stability in the law, *City of Las Vegas v. Oman*, 110 N.M. 425, 433, 796 P.2d 1121, 1129 (Ct.App.), *cert. denied*, 110 N.M. 282, 795 P.2d 87 (1990), it was never meant "to perpetuate the harsh and unjust results which blind adherence ... mandated," *Hicks v. State*, 88 N.M. 588, 591, 544 P.2d 1153, 1156 (1975), or to effectuate a "petrifying rigidity" in the law, *Cooper v. Curry*, 92 N.M. 417, 425, 589 P.2d 201, 209 (Ct.App.) (Sutin, J., dissenting) (quoting *Bing v. Thunig*, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 11, 143 N.E.2d 3, 9 (1957)), *cert. quashed*, 92 N.M. 353, 588 P.2d 554 (1978). A change in conditions compels adoption of a different rule. *Grubb v. Wolfe*, 75 N.M. 601, 605, 408 P.2d 756, 759 (1965). We are able to alter the common law as conditions change since the legislature has not acted within the field of consortium.

■ Our recognition of spousal consortium will not disrupt settled expectations, just as this Court's adoption of bystander recovery did not, because "[t]his cause of action imposes no new obligation of conduct on potential defendants." *Ramirez*, 100 N.M. at 542, 673 P.2d at 826. Ordinary care and proximate cause are still required; the presence of ordinary care or the absence of a causal relation-

ship between negligence and harm done will relieve potential defendants from liability. *See id.* The evolution of the law in our country, and particularly in New Mexico, which has removed the basis for the five justifications cited in *Roseberry*, dictates that this Court overrule *Roseberry* and *Tondre* and instruct the trial court to reinstate Mrs. Romero's common law claim for loss of consortium.

## II

The *Sears* case arises out of the death of Jeffrey Sears in an automobile accident that occurred while he was operating his 1985 Nissan pickup. The suit was brought in New Mexico Federal District Court against Nissan by Marina M. Sears both individually and as the personal representative of the Estate of Jeffrey Sears. Prior to proceeding with the case, the New Mexico Federal District Court certified two questions to this Court:

1. Does the New Mexico Wrongful Death Act, NMSA 1978 §§ 41–2–1 through 41–2–[4] (Repl.Pamp.1989), and the language in SCRA [1986,] 13–1830 (Repl.Pamp.1991), permit Plaintiff to introduce expert testimony by an economist for establishing a non-pecuniary value of life itself of the decedent and be awarded damages for non-pecuniary value of decedent's life itself?

2. Is loss of guidance and counseling for the minor children of the decedent recoverable as "monetary worth of the life of the deceased" or "loss to the beneficiaries of expected benefits that have a monetary value," and is it barred by New Mexico law on loss of consortium or the phrase "[I]t is not permissible for you to be influenced ... by the loss of the deceased's society to the family" in [SCRA 13–1830]?

We proceed first with discussion and holding on the second part of the first question.

### Value of Life Itself

■ The Act is the exclusive remedy governing wrongful death actions in New Mexico. *Stang v. Hertz Corp.,* 81 N.M. 69, 72–73, 463 P.2d 45, 48–49 (1969). By prior common law, a right of action for personal injuries was extinguished by the death of the person injured, and no civil action could be maintained for a tort resulting in death.

*Cain v. Bowlby,* 114 F.2d 519, 521 (10th Cir.), *cert. denied,* 311 U.S. 710, 61 S.Ct. 319, 35 L.Ed. 462 (1940). Legislative enactment of the Wrongful Death Act created a new cause of action in derogation of the common law. *Romero v. Atchison, T. & S.F. Ry. Co.,* 11 N.M. 679, 683, 72 P. 37, 37 (1903). Because the Act is in derogation of the common law, it is to be afforded a strict, rather than an expansive construction. *El Paso Cattle Loan Co. v. Hunt,* 30 N.M. 157, 158, 228 P. 888, 889 (1924); *Cain,* 114 F.2d at 521–22.

■ The Wrongful Death Act specifically provides:

Whenever the death of a person shall be caused by the wrongful act, neglect or default of another ... then ... the person ... who would have been liable, *if death had not ensued,* shall be liable to an action for damages, *notwithstanding the death of the person injured.*

Section 41–2–1 (emphasis added).

Every such action as mentioned in Section 41–2–1 NMSA 1978 shall be brought by and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment
. . . .

§ 41–2–3.

The purpose of the Act is to compensate the statutory beneficiaries and to deter negligent conduct. *Stang,* 81 N.M. at 72, 463 P.2d at 58. The statutory language instructs the jury to award fair and just damages, and allows the jury to consider the pecuniary injury to the decedent's statutory beneficiaries as an element of the worth of the life of the deceased. § 41–2–3. The presence or absence of pecuniary damages is a factor to be considered in arriving at a monetary figure for the value of the deceased's life. *Stang,* 81 N.M. at 72, 463 P.2d at 48. The plain language of Section 41–2–3 compels this conclusion because the phrase "taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties ..." is not a limiting phrase,

but indicates that more than the single factor of pecuniary loss should be considered by a jury to determine fair and just compensation. The jury has long been instructed that, "In determining the monetary worth of the life of the deceased, you should consider the age, earning capacity, health, habits and life expectancy of the deceased." SCRA 13–1830. Just as the jury in a personal injury case must determine the monetary worth of non-pecuniary losses, so too must the jury in a wrongful death action determine fair and just compensation for the reasonably expected nonpecuniary rewards the deceased would have reaped from life as demonstrated by his or her health and habits.

*Stang* directly answered the question of whether the personal representative could recover for the worth of the decedent's life regardless of the presence or absence of pecuniary injury to the statutory beneficiaries: "Proof of pecuniary injury is not a prerequisite to recovery of damages for wrongful death." 81 N.M. at 72, 463 P.2d at 48. This is also consistent with *Solon*, one of our more recent cases dealing with the Act. In *Solon*, we noted that the Act had been characterized as a survival statute in the past, and that it "provides a cause of action for the benefit of the statutory beneficiaries to sue a tortfeasor for the damages, measured by the value of the decedent's life, which the decedent himself would have been entitled to recover had death not ensued." 113 N.M. at 568, 829 P.2d at 647. *Solon* suggests that the proper analysis would be to evaluate the worth of the deceased's life had he continued to live. *Id.*

There are two aspects of nonpecuniary damages that make up "fair and just" compensation. Pain and suffering devolves from (1) that which the victim must newly endure and (2) that which the victim may no longer enjoy. The language of the Act clearly contemplates damages that encompass more than the pecuniary loss to the beneficiaries because of the loss of the deceased. In our opinion, the Act goes beyond the loss of decedent's wages, and encompasses all damages that are fair and just.

### Loss of Guidance and Counseling By Minor Children

The cause of action by a minor child for loss of guidance and counseling has not been considered by this Court, because the basis for the action was seen as rooted in loss of consortium. *Wilson v. Galt*, 100 N.M. 227, 234, 668 P.2d 1104, 1111 (Ct.App.), *cert. quashed*, 100 N.M. 192, 668 P.2d 308 (1983) (citing *Borer v. American Airlines*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977); *Ortega v. Plexco, a Div. of Chevron Chem. Corp.*, 793 F.Supp. 298, 300 (D.N.M.1991); *Valderaz v. Texaco*, No. 90–690–M (D.N.M. Nov. 6, 1991). Our opinion today establishing such a cause of action has opened the door for recognition of loss of guidance and counseling as well. Loss of guidance and counseling may be considered by a jury in fixing pecuniary loss to the survivors. The jury should be allowed to assess this loss as part of the value of the decedent's life. Other jurisdictions have recognized this approach, and have awarded damages for lost guidance and counseling independent of damages for loss of consortium or other losses.[2]

---

**2.** *See, e.g., McKee v. Colt Elecs. Co.*, 849 F.2d 46, 50–52 (2d Cir.1988) (under New York law, children allowed to recover for loss of parental "nurture, care and guidance," which court concluded was a pecuniary injury; controlling statute allows fact finder to award fair and just compensation for the resulting pecuniary injuries); *Dyer v. United States*, 551 F.Supp. 1266, 1282–83 (W.D.Mich.1982) (children awarded non-economic damages, in addition to damages for loss of their father's guidance and counseling; controlling statute allows fact finder to award fair and equitable damages, including damages for the loss of the society and the companionship of the deceased); *Stringham v. United Parcel Serv.*,

*Inc.*, 181 Ill.App.3d 312, 130 Ill.Dec. 81, 536 N.E.2d 1292, 1293–94 (Ill.App.Ct.1989) (pecuniary damages awarded to child for loss of instruction and training due to the death of her father upheld); *Didocha v. State*, 54 A.D.2d 786, 387 N.Y.S.2d 752, 753 (Sup.Ct.1976) (loss of care, love, and guidance is a proper element of pecuniary damages in a wrongful death case); *Estate of Clifton v. Southern Pacific Transp. Co.*, 686 S.W.2d 309, 318 (Tex.Ct.App.1985), *rev'd on other grounds*, 709 S.W.2d 636 (Tex.1986) (damages for lost education, care, counsel, and advice awarded in addition to loss of consortium damages.)

The Nissan Company argues against any such recognition, citing precedent including, most recently, *Solon* for the proposition that economic injury to decedent's dependents is against "social policy." To the contrary, *Solon* only suggests that there is a point at which "liability that would otherwise extend to [some] family members" is cut off. 113 N.M. at 571, 829 P.2d at 650. The cutoff point in *Solon* excludes parents of a twenty-five year old man who were "partially dependent upon him for their economic support...." *Id.* This is different from the consideration of pecuniary injury to the two small children of Jeffrey Sears. Also, it is significant that, as a matter of social policy, the Act includes minor children, left without a parent, as statutory beneficiaries. Section 41-2-3.

### Application

 The final issue to be decided is the application of these new common law rules. Having considered the manner in which this Court has applied other important changes in the common law, we are following the doctrine of application stated in *Scott v. Rizzo*, 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981) (as applied to comparative negligence).

Therefore, the holdings herein adopted are applicable to the instant case and all cases filed hereafter. Further, in those appropriate cases in which trial commences after the date on which this opinion becomes final, including those which may be remanded for retrial for whatever reason, the holdings in this case shall be applicable. And, finally, the new holdings shall be applicable to any case presently pending in the appellate courts in which the issue is preserved.

### Conclusion

In the first case, *Romero v. Byers*, we reverse and recognize a claim for loss of spousal consortium. In the related question certified to this Court by the Court of Appeals regarding the motion in limine, we affirm. Damages for loss of spousal consortium may not be awarded under the Act but must be sued for by the spouse or the personal representative in an individual capacity. Even though Mrs. Romero is now deceased, this action may be continued by her personal representative.

In the first question certified by the Federal District Court, *Sears v. Nissan*, we hold that the value of life itself is compensable under the Act. Admissibility of evidence directed at establishing this value is governed by the rules of evidence of the applicable trial court.

In the second question certified in *Sears*, we hold that loss of guidance and counseling by a minor child is a pecuniary injury under the Act and that SCRA 13-1830 does not bar recovery.

IT IS SO ORDERED.

MONTGOMERY, C.J., and RANSOM, BACA and FROST, JJ., concur.