**Certiorari Granted, December 6, 2012, No. 33,878**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-004**

**Filing Date: September 27, 2012**

**Docket No. 30,969**

**THE ESTATE OF REUBEN LAJEUENESSE,**
**by and through Personal Representative**
**Frances Boswell,**

       **Plaintiff-Appellant/Cross-Appellee,**

**v.**

**BOARD OF REGENTS OF THE UNIVERSITY**
**OF NEW MEXICO, a body corporate of the**
**STATE OF NEW MEXICO, for itself and its**
**public operations including UNIVERSITY OF**
**NEW MEXICO HEALTH SCIENCES CENTER**
**and its components the UNIVERSITY OF**
**NEW MEXICO HOSPITAL and**
**UNIVERSITY OF NEW MEXICO**
**SCHOOL OF MEDICINE,**

       **Defendants-Appellees/Cross-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Curtis & Lucero
Lisa K. Curtis
Amalia S. Lucero
Albuquerque, NM

for Appellant/Cross-Appellee

Simone, Roberts & Weiss, P.A.
David W. Frizzell
Meena H. Allen
Albuquerque, NM

for Appellees/Cross-Appellants

**OPINION**

**WECHSLER, Judge.**

**{1}** We address in this appeal tension between the Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2010), and the Wrongful Death Act (WDA), NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001), as to the maximum liability of a government entity in a wrongful death action when there is one decedent and multiple statutory beneficiaries. We hold that the TCA prevails and that the maximum liability of $400,000 "to any person" under NMSA 1978, Section 41-4-19(A)(3) (2004) (amended 2007), applies. We affirm the judgment of the district court.

**{2}** In the cross appeal, we consider whether the district court erred in allowing Plaintiff to present a video concerning the decedent's life to the jury, in granting Plaintiff double costs against Defendants under Rule 1-068(A) NMRA, contrary to the TCA, and by accumulating costs from the filing of an offer of settlement under Rule 1-068(A) rather than from the expiration of the period for Defendants to respond to the offer of settlement. We also affirm the judgment of the district court with respect to the issues on cross appeal.

**BACKGROUND**

**{3}** Plaintiff, the Estate of Rueben Lajeuenesse, brought this action by and through a personal representative for the wrongful death of Reuben Lajeuenesse (the decedent) based on the negligent medical care provided by Defendants. Before trial, Defendants made an offer of settlement under Rule 1-068(A) of $350,000. At trial, over Defendants' objections, Plaintiff played for the jury a video concerning the decedent's life. The district court ruled that the danger of unfair prejudice did not outweigh the video's probative value and that Defendants could have the opportunity to cross-examine the persons speaking on the video.

**{4}** The jury awarded Plaintiff damages of $750,000. The district court granted Defendants' motion for remittitur and reduced the verdict to $400,000 plus medical charges of $13,032, stating in part that "regardless of the language contained in the Wrongful Death Act," the "'per person' monetary limitation of $400,000 under the Tort Claims Act applies." With respect to Defendants' offer of settlement under Rule 1-068(A), the district court granted Plaintiff double costs accumulating from the date Defendants filed the offer of settlement.

2

**APPEAL—THE AMOUNT OF THE VERDICT**

**{5}**     The WDA permits the personal representative of a deceased person to bring an action for damages caused by the wrongful act or neglect resulting in the death of the deceased. Sections 41-2-1, -3.   In a wrongful death case, the jury "may give such damages, compensatory and exemplary, as they deem fair and just, taking into consideration the pecuniary injury resulting from the death to the surviving party entitled to the judgment, or any interest in the judgment[.]" Section 41-2-3.  When there is no surviving spouse and the deceased is survived by all of the deceased's children as in this case, the proceeds of a judgment obtained for wrongful death "shall be distributed" to the children.  Section 41-2-3(C).

**{6}**     The TCA sets forth the immunity of governmental entities and public employees and the exceptions for which the state has waived immunity for purposes of tort liability.  Section 41-4-4(A).  The TCA waives immunity for liability for damages for wrongful death caused by the negligence of public employees while acting within the scope of their duties.  *Id.* However, it limits the damages that can be awarded against a governmental entity or public employee acting within the scope of the employee's duties.  Section 41-4-19(A).   As pertinent to this case, the TCA provides that the liability of a governmental agency shall not exceed:

> (3)     the sum of four hundred thousand dollars ($400,000) to any person for any number of claims arising out of a single occurrence for all damages other than property damage and medical and medically related expenses as permitted under the [TCA]; or

> (4)     the sum of seven hundred fifty thousand dollars ($750,000) for all claims other than medical or medically related expenses arising out of a single occurrence.

Section 41-4-19(A) (2004).

**{7}**     To ascertain the proper amount of the verdict, we must examine the interplay of the WDA with the TCA and determine whether a wrongful death action brought by a personal representative on behalf of multiple statutory beneficiaries is considered a single claim under Section 41-4-19(A)(3) (2004) or multiple claims under Section 41-4-19(A)(4) (2004).  We review the meaning of statutory language under a de novo review.  *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.  We attribute to statutory language its ordinary and plain meaning unless the legislative context indicates otherwise. *Id.*; *see* NMSA 1978, § 12-2A-2 (1997) ("Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage.").  We seek to construe statutes covering the same subject matters together and harmoniously whenever possible. *Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453.  We note Plaintiff's argument that, as

3

remedial statutes, the WDA and the TCA should be construed broadly to advance the legislative intent. On the other hand, the WDA and the TCA are both statutes in derogation of the common law, which generally require strict construction. *Romero v. Byers*, 117 N.M. 422, 427, 872 P.2d 840, 845 (1994); *Methola v. Cnty. of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980). Regardless, we endeavor to construe the statutes in this case to fulfill the intent of the Legislature. *Methola*, 95 N.M. at 333, 622 P.2d at 238 (interpreting the TCA for legislative intent).

{8}     Plaintiff contends that Section 41-4-19(A)(4) (2004) applies because each statutory beneficiary is a "person" within the meaning of the TCA and, within the WDA, the statutory beneficiaries own the rights represented by a wrongful death action. We do not agree that the WDA or the TCA contemplates this structure under the facts of this case.

{9}     We begin with the TCA and its relationship with the WDA. The TCA governs the manner in which tort actions can be brought against governmental entities and public employees. *See* § 41-4-2(A) (stating, as a matter of public policy, "that governmental entities and public employees shall only be liable within the limitations of the [TCA] . . . and in accordance with the principles established in that act"). It is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived." Section 41-4-17(A). The TCA provides the specific types of tort liability that are excepted from the immunity granted to governmental entities and public employees. Section 41-4-4(A). A wrongful death action based on the negligence of public employees acting within the scope of their duties in the operation of a hospital is one of the exceptions. Section 41-4-9. We must look to the TCA to determine the availability and extent of a wrongful death action. *See* § 41-4-4(A).

{10}     With this structural backdrop, we turn to the WDA. At common law, a cause of action for personal injuries that resulted in death did not survive the death of the injured person. *Ickes v. Brimhall*, 42 N.M. 412, 415, 79 P.2d 942, 943 (1938). The WDA provides the statutory authority for a wrongful death action, permitting the cause of action to be brought by the personal representative of the injured, deceased person, "notwithstanding the death of the person injured." Sections 41-2-1, -3; *Chavez v. Regents of Univ. of N.M.*, 103 N.M. 606, 608, 711 P.2d 883, 885 (1985). The WDA ensures that persons whose negligence causes injury that would entitle an injured person to damages if the injured person had not died do not escape liability because the injury results in death. Section 41-2-1. If the injured person did not die, the injured person would possess the cause of action. The WDA permits the cause of action to survive. *Id.*

{11}     As originally enacted in 1882, the WDA permitted the surviving beneficiaries of the deceased to bring the action and be awarded damages "not exceeding five thousand dollars . . . with reference to the necessary injury resulting from such death[.]" *Stang v. Hertz Corp.*, 81 N.M. 69, 73, 463 P.2d 45, 49 (Ct. App. 1969) (internal quotation marks and citation omitted), *aff'd*, 81 N.M. 348, 467 P.2d 14 (1970). The WDA was amended in 1891 to give the personal representative of the deceased person the sole right to pursue the action. *Stang*,

4

81 N.M. at 73, 463 P.2d at 49; *see* § 41-2-3.

**{12}**     Of course, the Legislature did not intend for the personal representative to personally receive the damages in the capacity of personal representative.  The WDA states, as added in 1891, that the jury may award damages, "taking into consideration the pecuniary injury resulting from the death to the surviving party."  Section 41-2-3; *Stang*, 81 N.M at 73, 463 P.2d at 49.    Additionally, the WDA provides that the proceeds of any judgment be distributed to the injured, deceased person's beneficiaries and further provides the manner of such distribution.  Section 41-2-3.  It is in this manner that the personal representative acts as a nominal party for the benefit of the statutory beneficiaries.  *Chavez*, 103 N.M. at 608, 711 P.2d at 885.    However, the personal representative remains distinct from the beneficiaries as the party who must bring the wrongful death action and as the only party to the action pursuing the claims for damages that result from the injuries.  Section 41-2-3; *Chavez*, 103 N.M at 609, 711 P.2d at 886; *see In re Estate of Sumler*, 2003-NMCA-030, ¶ 29, 133 N.M. 319, 62 P.3d 776 (rejecting an argument that a wrongful death action abates upon the death of a beneficiary because the "right *to bring* the action is separate from the right to share in the proceeds of any recovery:  . . . the right of action survives to the . . . personal representative, not to the statutory beneficiaries").

**{13}**     We consider this status to be determinative when viewing the WDA through the language of the TCA.  *See* § 41-4-4(A) (stating that governmental immunity is waived only to the extent provided by the TCA).  Section 41-4-19(A)(3) (2004) of the TCA limits the damages "to *any person* for any number of claims arising out of a single occurrence." (Emphasis added.)  The person addressed is the person making, or having the ability to make, claims.  Under the WDA, statutory beneficiaries do not bring claims; the personal representative does because the injured person is deceased.  Section 41-2-3; *see Maestas v. Overton*, 86 N.M. 609, 610, 526 P.2d 203, 204 (Ct. App. 1974) ("A literal reading of the statute gives the personal representative a cause of action, only if the decedent would have had one, absent death."), *rev'd on other grounds by* 87 N.M. 213, 531 P.2d 947 (1975). Therefore, although the statutory beneficiaries receive the damages, the TCA focuses on the personal representative because it is the personal representative who brings the claims.

**{14}**     Moreover, this Court does not believe that the Legislature intended to expand governmental liability under the TCA based on the number of statutory beneficiaries that may survive an injured deceased in an action under the WDA.  There is only one deceased person in a wrongful death action.  For the purposes of "preservation" of the right of action, the personal representative replaces the injured deceased under the WDA.  *See Stang*, 81 N.M. at 79, 463 P.2d at 55 (stating that the WDA "preserves" the rights of action and "transmits" it to the personal representative).  Plaintiff argues in this regard that the Legislature intended to expand governmental liability because, as stated in *Stang*, it intended the WDA "to make negligence causing death costly to the wrongdoer." *Stang*, 81 N.M. at 77, 463 P.2d at 53.  To be sure, the Legislature intended the WDA to preclude wrongdoers from escaping the consequences of their wrongdoing.   But the WDA nevertheless contemplates in circumstances such as this case that there be a single recovery from the

5

wrongdoer, even though it may be divided among more than one statutory beneficiary. The WDA's purpose concerning wrongdoers does not address the Legislature's clarity in permitting an action under the WDA only within the structure of the TCA. Section 41-4-4(A).

{15}    Plaintiff argues that the measure of damages wrongful death uniform jury instruction demonstrates that the personal representative acts only on behalf of the statutory beneficiaries. UJI 13-1830 NMRA, the jury instruction given in part in this case, expresses that the personal representative brought the lawsuit on behalf of the surviving beneficiaries and names the beneficiaries. We agree that the uniform jury instruction parallels the WDA requirement that the jury determine the proper sum to be distributed to the surviving party or parties. Section 41-2-3.

{16}    Another aspect of UJI 13-1830, however, underscores that the personal representative is the single person in this case bringing the claims on behalf of the statutory beneficiaries under the WDA. UJI 13-1830 includes several possible elements of damages depending on the evidence in the case. These include expenses for medical care and treatment, funeral and burial expenses, pain and suffering, the value of the deceased's life apart from lost earning capacity, loss of consortium, loss of guidance or counseling of minor children, and other expected benefits. *Id.* The use note to UJI 13-1830 indicates that "the elements of damage listed in the instruction may not all be recoverable by the same person or entity." By way of example, the use note states that the personal representative may not be the person to recover for a loss of consortium claim unless the personal representative is one and the same as the surviving spouse or familiar caretaker. Use Note, UJI 13-1830. In this case, all claims were made by the personal representative on behalf of all the statutory beneficiaries equally. No claims for damages were made that were recoverable by a person other than the personal representative. But, depending on the claims and evidence, the recovery may focus on more than solely the personal representative in another wrongful death case. We do not address the maximum damages under the TCA if claims for damages were made that would change the focus in this manner.

{17}    We lastly address Plaintiff's argument that the Legislature could not have intended "person" within Section 41-4-19 to mean "a personal representative" because the maximum liability under Section 41-4-19 could then be manipulated by the appointment of co-personal representatives. Although more than one personal representative can be designated, *see, e.g.*, *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 2, 147 N.M. 720, 228 P.3d 504, *aff'd by* 2011-NMSC-039, 150 N.M. 650, 265 P.3d 701, such designation would not affect the maximum liability under Section 41-4-19. The Legislature used the singular in Section 41-2-3 in allowing "the personal representative" to bring a wrongful death action. Even if there were co-personal representatives, they serve the singular purpose of bringing the wrongful death action.

{18}    Statutory interpretation is not necessarily a precise undertaking. *See Jeffrey v. Hays Plumbing & Heating*, 118 N.M. 60, 63, 878 P.2d 1009, 1012 (Ct. App. 1994) (stating that

"[w]e should not attribute to the [L]egislature an undue precision in drafting and thereby frustrate legislative intent when we construe a statute"). We nevertheless seek the Legislature's intent, even if statutes cannot be read in perfect harmony. *See City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108 (stating that we will depart from the plain meaning "to deal with an irreconcilable conflict among statutory provisions" (internal quotation marks and citation omitted)). Section 41-4-19(A)(3) (2004) protects the public funds of the state from tort liability for damages in part by limiting the damages that can be recovered by any person for a single occurrence to $400,000. Personal representatives may bring wrongful death actions to pursue injuries to and resulting from the death of their deceased. Sections 41-2-1, -3. The personal representative, whether consisting of one or more individuals, is the "person" for purposes of Section 41-4-19(A)(3) (2004). Section 41-4-19(A)(3) (2004) controls the liability limitation in this case.

**CROSS APPEAL—VIDEO**

{19}    Exhibit 27 was entitled "Day in the Life video." The district court allowed Plaintiff to present it to the jury over Defendants' objection. It lasted approximately five minutes and included, in bucolic settings with intermittent guitar music, six unidentified people speaking about the decedent. It begins and ends with a view of the cemetery where the decedent is buried and includes descriptions of the decedent's interests and character.

{20}    We review the district court's admission of evidence for an abuse of discretion. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 (reviewing "the admission of evidence under an abuse of discretion standard and [stating that we] will not reverse in the absence of a clear abuse"). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 30, 148 N.M. 627, 241 P.3d 628 (internal quotation marks and citation omitted).

{21}    Defendants objected to the showing of the video to the jury under Rule 11-403 NMRA, which allows the exclusion of evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or [by] needlessly presenting cumulative evidence." Defendants contend on appeal that the video was prejudicial because its principal purpose was to arouse sympathy.

{22}    We initially note that even Plaintiff acknowledges the misnomer of the video exhibit. The video did not describe a day in the life of the decedent as is typically offered by a plaintiff in a personal injury case. *See, e.g.*, *Bannister v. Town of Noble*, 812 F.2d 1265, 1270-71 (10th Cir. 1987) (declining to find an abuse of discretion demonstrating the plaintiff's daily routine after an injury). We are thus not guided by the case law addressing such evidence.

{23}    In this wrongful death case, the sole issue for the jury was damages; the district court granted judgment as to liability as a matter of law. As to damages, the jury had to decide the

value of the decedent's life apart from his earning capacity. The district court could properly, therefore, recognize the description of the decedent's life on the video as being probative of this issue. *See Romero*, 117 N.M. at 428, 872 P.2d at 846 (stating that in a wrongful death case the jury must "determine fair and just compensation for the reasonably expected nonpecuniary rewards the deceased would have reaped from life as demonstrated by his or her health and habits").

**{24}** Defendants assert that the video's probative value is outweighed by the ability of the video to elicit sympathy, the paucity of facts in the video, the lack of foundation by any witness, the inability to test the facts of the video against other evidence, and the cumulative nature of the video. Defendants stress that the video does not identify the persons speaking or establish dates for the activities attributed to the decedent.

**{25}** In orally ruling on the admission of the video, the district court disagreed with Defendants. As to the emotional nature of the video, the district court stated "I understand there's guitar playing in the background, but I think to watch a video is pretty flat without some kind of sound." It added that "the emotion is very limited[,]" and it ruled that it did not "see it as the probative value being substantially outweighed by the danger of unfair prejudice." The district court noted that Defendants had already cross- examined two of the three main people who spoke on the video. It allowed Defendants the opportunity to cross-examine the third and to again cross-examine the other two.

**{26}** The district court has broad discretion in allowing this type of evidence because it is in the best position to evaluate the prejudice Defendants assert. *State v. Chavez*, 116 N.M. 807, 812, 867 P.2d 1189, 1194 (Ct. App. 1993) (noting that the "trial court is in the best position to evaluate the evidence of prejudice" to the defense). We cannot say that the district court abused its discretion by allowing the video evidence. Nor do we believe that the district court placed Defendants in a prejudiced situation by affording them additional cross-examination, as Defendants argue. Defendants could decline to conduct the cross-examination if they believed that it would be unproductive to their case, and, indeed, they did not conduct the cross-examination.

## CROSS APPEAL—AWARD OF COSTS

**{27}** The jury's verdict exceeded the offer of judgment Plaintiff had extended to Defendants prior to trial under Rule 1-068(A), and the district court awarded Plaintiff double the costs Plaintiff incurred from the date of Plaintiff's offer. Defendants raise two issues in their cross appeal concerning these costs. They argue that (1) the award of double costs was contrary to the TCA, and (2) the district court should have calculated the double costs from the date Plaintiff's offer of judgment expired rather than from the date of the offer. We interpret both statutes and rules as matters of law under de novo review and search for their drafters' intent. *See City of Albuquerque*, 2012-NMSC-007, ¶ 12; *Cooper*, 2002-NMSC-020, ¶ 16.

8

**{28}** Rule 1-068(A) provides in pertinent part:

> Except as provided in this rule, at any time more than ten (10) days before the trial begins, any party may serve upon any adverse party an offer to allow an appropriate judgment to be entered in the action in accordance with the terms and conditions specified in the offer. . . . If within ten (10) days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon such judgment may be entered as the court may direct. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.
>
> If an offer of settlement made by a claimant is not accepted and the judgment finally obtained by the claimant is more favorable than the offer, the defending party must pay the claimant's costs, excluding attorney's fees, including double the amount of costs incurred after the making of the offer.

As to conflict with the TCA, the TCA provides:

> No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment.

Section 41-4-19(D). Defendants analogize the double costs provision of Rule 1-068(A) to punitive damages and prejudgment interest, both prohibited by the TCA. They further contend that the TCA does not authorize the recovery of double costs, and the TCA should be strictly construed because it is in derogation common law rights.

**{29}** However, double costs under Rule 1-068(A) are not punitive damages or prejudgment interest. Our Supreme Court adopted the double costs provision as an "additional incentive" for the parties to reach a settlement in a case. Rule 1-068 Comm. cmt. for 2003 Amendment.

**{30}** In *State ex rel. New Mexico State Highway & Transp. Dep't. v. Baca*, 120 N.M. 1, 896 P.2d 1148 (1995), our Supreme Court considered imposition of attorney fees against the state in light of the state's immunity under the TCA. In weighing the state's protection of its public revenues against the "court's authority to control the parties and the litigation before it" by issuing attorney fee sanctions, the Court determined that the Court's authority should prevail. *Id.* at 8, 896 P.2d at 1155. The Court recognized that the sanction of attorney fees has both compensatory and punitive aspects. *Id.* at 7, 896 P. 2d at 1154.

**{31}** Our Supreme Court acted within its inherent rulemaking authority in promulgating Rule 1-068(A). *See Jones v. Harris News, Inc.*, 2010-NMCA-088, ¶ 5, 148 N.M. 612, 241

9

P.3d 613 (recognizing that our "Supreme Court has the ultimate authority to prescribe the rules of procedure for the courts of New Mexico"). Although the double costs provision may involve a sanction or punitive aspect, this aspect is subordinate to the primary purpose of the provision to act as an incentive to settlement. No one questions the interest of the courts in promoting settlement as a means to control their dockets and regulate judicial efficiency. *See Baca*, 120 N.M. at 4, 896 P.2d at 1151 (recognizing the inherent power of the courts "to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings" (internal quotation marks and citation omitted)). Nor do we consider the double costs provision of Rule 1-068(A) to be similar to pre-judgment interest. Costs are not interest.

**{32}** Defendants' second argument concerning Rule 1-068(A) is that the district court erred by calculating the double costs award from the date Plaintiff made its offer of settlement rather than from the date, ten days later, when Defendants failed to act on the offer. However, when there is a judgment that is more favorable than an offer of settlement, the language of Rule 1-068(A) requires the defending party to pay "double the amount of costs incurred *after the making of the offer*." (Emphasis added.) Although it may have been reasonable for our Supreme Court to have written the rule to run the costs from the conclusion of the ten-day period in which a defending party can accept an offer of settlement, it did not do so. Instead, the plain language of Rule 1-068(A) requires the costs to be calculated from the date of the offer.

**CONCLUSION**

**{33}** The district court did not err with respect to the issues raised in both the appeal and the cross appeal. We affirm the district court's judgment.

**{34}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for *Est. of Lajeuenesse v. UNM Bd. of Regents*, No. 30,969**

**APPEAL AND ERROR**
Standard of Review

10

**EVIDENCE**
Photographs
Probative Value vs. Prejudicial Effect

**JUDGES**
Abuse of Discretion

**JURY INSTRUCTION**
Civil Jury Instructions

**REMEDIES**
Costs
Damages, General

**STATUTES**
Applicability
Conflicting Statutes
Legislative Intent

**TORTS**
Medical Malpractice
Tort Claims Act
Wrongful Death

**WILLS, TRUSTS, AND ESTATES**
Personal Representative