**Certiorari Denied, December 6, 2013, No. 34,362**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-001**

**Filing Date: September 16, 2013**

**Docket No. 30,868**

**THE WRONGFUL DEATH ESTATE OF
ANN KRAHMER, BY THE PERSONAL
REPRESENTATIVE, CHRIS PECK,**

　　**Plaintiff-Appellee,**

**v.**

**LAUREL HEALTHCARE PROVIDERS, LLC,
ARBOR SPRINGS, LLC, CAPISTRANO
INVESTMENTS, LLC, A&J VENTURES, LLC,
M. SCOTT ATHANS, ALAN ZAMPINI,
SKILLED HEALTHCARE GROUP, LLC,
SKILLED HEALTHCARE, LLC, and
ST. CATHERINE HEALTHCARE &
REHABILITATION CENTER, LLC,**

　　**Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Carl J. Butkus, District Judge**

Harvey Law Firm
Dusti D. Harvey
Jennifer J. Foote
Albuquerque, NM

Sorey Law Firm
R. Daniel Sorey
Longview, TX

for Appellee

Keleher & McLeod, P.A.

1

Kathleen M. Wilson
Cassandra R. Malone
Albuquerque, NM

for Appellants Laurel Healthcare Providers, LLC, Arbor Springs, LLC, Capistrano Investments, LLC, A&J Ventures, LLC, M. Scott Athans, & Alan Zampini

Rodey, Dickason, Sloan, Akin & Robb, P.A.
W. Robert Lasater, Jr.
Sandra L. Beerle
Jocelyn Drennan
Albuquerque, NM

for Appellants St. Catherine Healthcare & Rehabilitation Center, Skilled Healthcare, LLC, and Skilled Healthcare Group, LLC

**OPINION**

**KENNEDY, Chief Judge.**

**{1}**     Chris Peck (Plaintiff) is the personal representative of the wrongful death estate of the decedent, Ann Krahmer, who he alleges died as a result of a nursing home's poor care. Plaintiff filed a wrongful death action against the nursing home, which responded with a motion to compel arbitration, pursuant to an agreement signed when Krahmer entered the nursing home.  In this case, we hold that because a wrongful death action is entirely derivative of the decedent's right to sue, a valid arbitration agreement signed by a competent party binds that party's estate and statutory heirs in a subsequent wrongful death action.  We reverse the district court's denial of the motion to compel arbitration and remand for further proceedings.

## I.     BACKGROUND

**{2}**     Krahmer entered a nursing home when her family was no longer able to care for her at home.  Her son, Plaintiff, signed her admission paperwork, pursuant to the power of attorney he held on her behalf.  The Admission Agreement included an Arbitration Agreement that bound Krahmer, her "representatives, successors, family members and heirs[,] and the personal representative or representative of [Krahmer] or [Krahmer's] estate" to arbitrate "any and all disputes associated with this Arbitration Agreement and the relationship created by the Admission Agreement and/or the provision of services under the Admission Agreement."

**{3}**     Krahmer resided at the nursing home for approximately five months, at which point, she was hospitalized and died.  Plaintiff, as personal representative of Krahmer's wrongful death estate, brought a wrongful death lawsuit, alleging that, while in the nursing home's

care, she suffered injuries that caused a deterioration of her health and eventual death. *See* NMSA 1978, § 41-2-3 (2001). The nursing home changed hands during Krahmer's stay and was variously owned and managed by a panoply of corporations,[1] along with two individual managers, M. Scott Athans and Alan Zampini (collectively, Defendants).

**{4}** Based on the arbitration clause in the Admission Agreement, Defendants moved the district court to compel arbitration. Plaintiff responded that, as the personal representative of Krahmer's wrongful death estate, he is not bound by the Arbitration Agreement. The district court agreed and denied arbitration based solely on its determination that the wrongful death representative is not bound by Krahmer's Arbitration Agreement. This appeal followed.

## II.    DISCUSSION

**{5}** We now consider the sole question in this case:  whether Plaintiff, the personal representative of a wrongful death estate, is bound by the Arbitration Agreement that would have bound Krahmer had she lived. The answer depends on the manner in which our Wrongful Death Act, NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001), transmits the rights of the decedent and whether it thus binds the wrongful death representative. "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901.

### A.    The Wrongful Death Act Changed Common Law and is Strictly Construed

**{6}** When the Wrongful Death Act (the Act) was passed in 1882, it abrogated the common law by providing statutory authority for a wrongful death action to be brought by the personal representative of the injured, deceased person. Sections 41-2-1, -4; *Estate of Lajeuenesse ex rel. Boswell v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-004, ¶ 10, 292 P.3d 485, *cert. quashed*, 2013-NMCERT-001, 299 P.3d 864. The Act permits a statutory personal representative to bring a cause of action, "notwithstanding the death of the person injured." Section 41-2-1. It is the exclusive remedy governing wrongful death actions in New Mexico. *Stang v. Hertz Corp.*, 1969-NMCA-118, ¶¶ 9-10, 81 N.M. 69, 463 P.2d 45, *rev'd on other grounds*, 1972-NMSC-031, 83 N.M. 730, 497 P.2d 732. Because a decedent's claim survives her death, we have referred to the Act as a "survival statute." *See Romero v. Byers*, 1994-NMSC-031, ¶ 18, 117 N.M. 422, 872 P.2d 840. As a statute "in derogation of the common law, it is to be afforded a strict, rather than an expansive[,] construction." *Id.* ¶ 15 (citing *El Paso Cattle Loan Co. v. Hunt*, 1924-NMSC-069, ¶ 4, 30 N.M. 157, 228 P. 888). The text of Section 41-2-1 focuses on the wrongdoer's continued

---

[1]Laurel Healthcare Providers, LLC, Arbor Springs, LLC, Capistrano Investments, LLC, A&J Ventures, LLC, Skilled Healthcare Group, LLC, Skilled Healthcare, LLC, and St. Catherine Healthcare & Rehabilitation Center, LLC.

liability to the decedent where the death is caused by a wrongful act and, had death not ensued, the injured party would have been entitled to "maintain an action and recover damages in respect thereof[.]" The Act provides that "the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured." *Id.* Under the strict construction of the Act compelled by *Romero*, the same cause of action exactly as it would have been possessed by the decedent is what is transmitted to the personal representative, and any limitations on the decedent's personal right to maintain an action will survive as well.

**B.     The Act Transfers No Rights Beyond Those That the Injured Party Possessed**

**{7}**     Since the early days of statehood, New Mexico courts have characterized the Act as a statute that transmits the decedent's rights to file a claim to the representative of the wrongful death estate. In *Hogsett v. Hanna*, our Supreme Court addressed a wrongful death claim based in negligence resulting in death. 1936-NMSC-063, ¶ 1, 41 N.M. 22, 63 P.2d 540. Noting that our wrongful death statute is based on Missouri's statute, our Supreme Court stated that the Act does not create a new cause of action. *Id.* ¶ 9. Rather, "[i]t transmits to the designated persons a cause of action when the injured person would have had one had death not ensued." *Id.* (citing *Proctor v. Hannibal*, 64 Mo. 112 (1876); *White v. Maxcy*, 64 Mo. 552 (1877); *Crumpley v. Hannibal*, 11 S.W. 244 (Mo. 1889)).

**{8}**     New Mexico courts have continued to characterize the representative's rights as derivative of the decedent's. *See Estate of Lajeuenesse*, 2013-NMCA-004, ¶ 14 (stating that the Act "preserves the rights of action and transmits it to the personal representative" (internal quotation marks and citation omitted)), *see also Stang*, 1969-NMCA-118, ¶ 48. In *Stang*, our Supreme Court cited *Hogsett*, among other cases, determining that the personal representative could recover for the injury to the decedent, namely, pain and suffering occurring before death regardless of there being no injury to the beneficiaries. *Stang*, 1969-NMCA-118, ¶¶ 48-50. Our Supreme Court has further held that, in addition to pecuniary loss to the beneficiaries, a wrongful death representative may recover for the decedent's pain and suffering, which "devolves from (1) that which the victim must newly endure and (2) that which the victim may no longer enjoy." *Romero*, 1994-NMSC-031, ¶ 19. We have held that "[a] literal reading of the statute gives the personal representative a cause of action, only if the decedent could have had one, absent death." *Maestas v. Overton*, 1974-NMCA-089, ¶ 5, 86 N.M. 609, 526 P.2d 203, *rev'd on other grounds*, 1975-NMSC-004, 87 N.M. 213, 531 P.2d 947.

**{9}**     The federal courts, recently applying New Mexico law in situations analogous to this case, have also concluded on this basis, relying on *Maestas*, that the Act binds a representative to arbitrate. *THI of N.M. at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1328 (2012) ("Thus, wrongful death claims are derivative of a decedent's rights, and a wrongful death beneficiary has no claim save those claims that the decedent herself would have had."). In *Lovato*, a wrongful death representative brought claims against a nursing home, and the nursing home moved to compel arbitration based on an arbitration agreement

that would have bound the decedent. *Id.* at 1314. The *Lovato* court reasoned that because the decedent would have been bound to arbitrate, and the decedent's cause of action is handed on to the personal representative by the Act, the representative is also bound to submit to arbitration. *Id.* at 1328 (citing *Stang*, 1969-NMCA-118, ¶ 49).

**{10}** After the *Lovato* case, the United States District Court, in a memorandum opinion, certified to the New Mexico Supreme Court the precise question we face in this case: whether a wrongful death representative is bound to arbitrate if the decedent was personally bound by an arbitration agreement. *THI of N.M. at Vida Encantada, LLC v. Archuleta*, 2013 WL 2387752, No. Civ. 11-399 LH/ACT (D.N.M. April 30, 2013). Our Supreme Court quashed its certification in the matter without rendering a decision, and the federal court went on to determine in a memorandum opinion that the Act bound the representative to arbitration. *Id.* at 6, 10. We agree with the analysis of the Act in *Lovato* as well.

**{11}** This Court has previously held that limitations on the decedent's right to sue may also be transmitted in some situations. One such limitation is that only a single recovery, reflecting the single decedent, is permitted under the Tort Claims Act. The recovery is divided among all the beneficiaries of a single decedent's wrongful death estate, rather than to be multiplied by the number of statutory beneficiaries. *Estate of Lajeuenesse*, 2013-NMCA-004, ¶ 14. Additionally, *Estate of Lajeuenesse* limited the amount of damages recoverable by the personal representative under the Tort Claims Act to no more than the decedent was allowed to recover. *Id.* ¶¶ 17-18. By analogy, other limitations on the decedent's right to maintain a cause of action for injuries may apply, such as an arbitration agreement.

**{12}** The district court in this case erroneously relied on *Bybee v. Abdulla*, 2008 UT 35, 189 P.3d 40, in finding that the personal representative was not bound to arbitrate the decedent's claims. In Utah, wrongful death actions are covered not only by statute, but by a constitutional provision that resists a restrictive interpretation. *Id.* ¶ 19 ("We have previously acknowledged that the wrongful death action's constitutional status entitles it to special protection against attempts to pare back its scope."). In addition, because Utah has both wrongful death and survivor statutes,

> [c]laims that could be brought under the survivor statute, unlike those available under the wrongful death cause of action, are based only on special damages that would have been available to the decedent. In contrast, in a wrongful death action[,] the expansive scope of damages available extends well beyond what is permitted by the survivor statute.

*Id.* ¶ 34. New Mexico, in contrast, does not have a similar survival statute that is distinct from our Act and, as described above, the availability of remedies is limited only to those recoverable by the decedent. For all these reasons, Utah law is unhelpful to our analysis.

**{13}** We also disagree with Plaintiff's argument that, because our original wrongful death

5

statute was based on Missouri law, and it recently ruled that its statute does not bind the representative to arbitrate, we should interpret our statute similarly. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 526 (Mo. 2009) (en banc). Missouri has developed case law characterizing its statute as a non-survival statute that creates a new cause of action for beneficiaries. *Id.* at 527 ("The right of action thus created is neither a transmitted right nor a survival right." (internal quotation marks and citation omitted)). Plaintiff does not take note of the water that has passed under the original legal bridge between our states' statutes. The difference between our courts' interpretation of our Act as one that transmits a derivative right, and Missouri's categorization of its wrongful death act as creating a new statutory right that is based on neither transmittal nor survival of the decedent's cause of action, does not escape our notice. Missouri's law's historical relevance to our Act has ended.

**{14}**    We also note that New Mexico's strong policy preference for arbitration supports binding the representative by the decedent's agreement. *Dairyland Ins. Co. v. Rose*, 1979-NMSC-021, ¶ 14, 92 N.M. 527, 591 P.2d 281. Our conclusion today in favor of arbitration is also consistent with the United States Supreme Court's recent decision in *Marmet Health Care Center, Inc. v. Brown*, in which it upheld an agreement to arbitrate a decedent's wrongful death estate against West Virginia's categorical prohibition against arbitration agreements covering wrongful death. 132 S. Ct. 1201, 1203-04 (2012). "West Virginia's prohibition against predispute agreements to arbitrate personal[]injury or wrongful[]death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the [Federal Arbitration Act]." *Id.*

## C.    The Validity of the Arbitration Clause Was Not Decided Below

**{15}**    As a final matter, we briefly address Plaintiff's alternative argument that the Arbitration Agreement was substantively unconscionable and therefore unenforceable. Here, the district court did not consider or make any findings on the issue. As a general matter, a party must present us with a ruling on the issue from the district court obtained on the same grounds argued in this Court. *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. Although Plaintiff raised the issue of unconscionability below, the district court resolved the case solely on the premise that the beneficiaries were not bound to arbitrate, and it "assumed that the 'Arbitration Agreement' is otherwise valid and otherwise applies to the claims in the [c]omplaint." Because the court denied Defendants' motion to arbitrate based only on one of the theories that Plaintiff offered, we remand so that the district court may make factual findings regarding whether the Arbitration Agreement was unconscionable. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 22, 106 N.M. 523, 746 P.2d 152 ("[T]his Court may remand a case to [the] district court for the making of proper findings of fact.").

## III.    CONCLUSION

**{16}** We hold that the Act transmits Krahmer's cause of action to her representative, whose claim is limited by the Arbitration Agreement binding Krahmer at the time of her death. Because Krahmer was bound to arbitrate her claims with the nursing home, so is her representative. We reverse the district court's denial of Defendants' motion to compel arbitration and remand for findings regarding Plaintiff's remaining arguments.

**{17}   IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for** *Peck v. Laurel Healthcare Providers, L.L.C.*, **No. 30,868**

**APPEAL AND ERROR**
Remand
Standard of Review

**CIVIL PROCEDURE**
Arbitration

**CONTRACTS**
Unconscionable

**NEGLIGENCE**
Wrongful Death

**REMEDIES**
Arbitration

**STATUTES**
Rules of Construction

**TORTS**
Medical Malpractice
Wrongful Death