# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:  May 19, 2016**

**ESTATE OF ALICE C. BRICE, by and
through Personal Representative TRACY A.,
and Minors, EMILY A., and HANNAH A., by
and through their parent and next friend,
TRACY A.,**

      Plaintiff-Appellant,

v.                                                                                    NO.  S-1-SC-34873

**TOYOTA MOTOR CORPORATION,
a Japanese corporation; TOYOTA MOTOR
SALES, U.S.A., INC., a California corporation;
TOYOTA MOTOR ENGINEERING & MANUFACTURING
NORTH AMERICA, INC., a Kentucky corporation;
TOYOTA MOTOR NORTH AMERICA, INC., a California
corporation; TOYOTA MOTOR MANUFACTURING,
CALIFORNIA, INC., a California corporation; TOYOTA
TECHNICAL CENTER U.S.A., a Japanese corporation;
TOYOTA TECHNICAL CENTER JAPAN, a Japanese corporation;
LARRY H. MILLER CORPORATION NEW MEXICO, d/b/a
AMERICAN TOYOTA; NEW MEXICO STATE HIGHWAY
DEPARTMENT; and DOES 1 through 10, inclusive, and each of them,**

      Defendants-Appellees.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Sarah M. Singleton, District Judge**

Tucker Law Firm, P.C.
Steven Lee Tucker
Santa Fe, NM

Curtis & Lucero
Lisa K. Curtis
Amalia J. Skogen Lucero
Albuquerque, NM

The Komyatte Law Firm
Paul Komyatte
Golden, CO

for Plaintiff-Appellant


Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Jeffrey M. Croasdell
Todd E. Rinner
Albuquerque, NM

for Defendants-Appellees

**OPINION**

**MAES, Justice.**

{1}    In this certified appeal we consider whether the doctrine of fraudulent concealment applies to actions under the Wrongful Death Act (WDA), NMSA 1978, Sections 41-2-1 to -4 (1882, as amended through 2001). This is an issue of first impression in New Mexico. We hold that the doctrine of fraudulent concealment may apply to toll the statutory limitations period for a wrongful death claim if a defendant has fraudulently concealed a cause of action, thereby preventing that defendant from claiming the statute of limitations as a defense until the plaintiff learned or, through reasonable diligence, could have learned of the cause of action. Accordingly we reverse and remand to the district court

**I.    Background**

{2}    Alice Brice (Decedent) died in an automobile accident on September 13, 2006, when her 2002 Toyota Camry suddenly accelerated into a highway intersection, collided with a tractor-trailer, and burst into flames. The Estate of Alice C. Brice (Plaintiff) filed a wrongful death lawsuit on August 31, 2010, asserting products liability and various other claims against the car manufacturer, the dealer, and others (Defendants).

{3}    Because this wrongful death action was filed three years and eleven months from the date of Decedent's death, Defendants moved for judgment on the pleadings in district court pursuant to Rule 1-012(C) NMRA.  Defendants argued that under the three-year statute of limitations period in the WDA, (1) a wrongful death cause of action accrues "as of the date of death," § 41-2-2 (1961), (2) this provision is strictly construed, and (3) this provision does not allow for tolling.  Plaintiff argued that the statute of limitations period was equitably tolled by Defendant's fraudulent concealment.  Plaintiff alleges that Defendants prevented Plaintiff from obtaining knowledge about the cause of action, that Defendants were aware of the sudden acceleration problem in its vehicles for most of the decade preceding 2010 and well before Decedent's 2006 accident, and that Defendants fraudulently concealed these problems until February 2010 when the sudden acceleration problems drew public attention and led to congressional hearings.  Plaintiff contends that it had no way to discover its wrongful death cause of action before February 2010.  Plaintiff asserts that after discovering its cause of action, it promptly filed its wrongful death suit on August 31, 2010.

{4}    The district court granted Defendants' motion for judgment on the pleadings. Plaintiff appealed the unfavorable summary judgment to the Court of Appeals,

2

claiming that the WDA limitations period may be equitably tolled on the basis of fraudulent concealment. The Court of Appeals certified the appeal to this Court under NMSA 1978, Section 34-5-14(C) (2) (1972) and Rule 12-606 NMRA stating that resolution of this appeal involves significant issues of law and policy that are of substantial public interest that should be determined by the New Mexico Supreme Court. We accepted certification.

**Standard of Review**

{5}     Whether the doctrine of fraudulent concealment may serve to toll the statutory limitations period for a cause of action under the WDA presents an issue of statutory interpretation, which we review de novo. *See Glaser v. LeBus*, 2012-NMSC-012, ¶ 8, 276 P.3d 959. "When this Court construes statutes, our guiding principle is that we should determine and effectuate the Legislature's intent when it enacted the statute." *State ex rel. Brandenburg v. Sanchez*, 2014-NMSC-022, ¶ 4, 329 P.3d 654. "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and [w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 12, 150 N.M. 97, 257 P.3d 917 (alteration in original) (internal quotation marks and citation omitted). "We have repeatedly

3

cautioned that despite the 'beguiling simplicity' of parsing the words on the face of a statute, we must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *State v. Strauch,* 2015-NMSC-009, ¶ 13, 345 P.3d 317. Therefore, when the Legislature's intent is not clear from the plain language of a statute, "we consider the statute's history and background insofar as it may help to give effect to the Legislature's intent." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 33, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). Indeed, "[s]tatutes should be construed so as to facilitate their operation and the achievement of the goals as specified by the legislature." *Roberts v. Sw. Cmty. Health Services*, 1992-NMSC-042, ¶ 12, 114 N.M. 248, 837 P.2d 442.

## II. Discussion

{6} Plaintiff argues that the doctrine of fraudulent concealment is deeply rooted in the common law and provides equitable grounds for tolling the limitations period in the WDA. Defendants argue that the limitations period in the WDA must be "strictly" applied and that it is for the Legislature to decide if fraudulent concealment applies to toll the limitations period of the WDA. To resolve this issue of first impression, we discuss the common-law doctrine of fraudulent concealment and then

4

examine whether the Legislature intended fraudulent concealment to apply to the limitations period in the WDA.  Finally, we consider Defendants' reliance on a number of older, inapposite cases, both from this Court and the Court of Appeals.

**A.      Fraudulent Concealment at Common Law and in New Mexico**

{7}      The common law has long recognized that a person who commits fraud should not be permitted to benefit from that conduct.  *See, e.g.*, *Talbot v. Jansen*, 3 U.S. (3 Dall.) 133, 158 (1795) ("[P]ersons guilty of fraud, should not gain by it.  Hence the efficacy of the legal principle, that no man shall set up his own fraud or iniquity, as a ground of action or defence.").  Public policy further supports this legal principle.

> To decide the case we need look no further than the maxim that no man may take advantage of his own wrong.  Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

*Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232-33 (1959).

{8}      It is a well settled in both "general common law," and "federal law[] that fraudulent concealment of a cause of action by the defendant will toll the statute of limitations." *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340-41 (5th Cir. 1971) (citations and footnote omitted); *see, e.g.*, *Bailey v. Glover*, 88 U.S. 342, 347-50 (1874) (tolling the statute of limitations period because the defendant's fraudulent

concealment of assets during bankruptcy proceedings prevented the plaintiff from discovering the injury incurred by that concealment); *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (concluding that the equitable doctrine of fraudulent concealment "is read into every federal statute of limitation").

{9} In 1876, before the enactment of the WDA, the New Mexico Territorial Legislature adopted "the common law as recognized in the United States of America" as the law of New Mexico. NMSA 1978, § 38-1-3 (1876); *see Lopez v. Maez*, 1982-NMSC-103, ¶ 6, 98 N.M. 625, 651 P.2d 1269. Not only has New Mexico adopted the common law, to the extent it is applicable to our "condition and circumstances," *Johnson v. Amstutz*, 1984-NMSC-030, ¶ 3, 101 N.M. 94, 678 P.2d 1169, the New Mexico courts likewise generally adhere to the proposition that one should not be allowed to take advantage of one's own wrong, *see, e.g., Sauter v. Saint Michael's College*, 1962-NMSC-107, ¶ 24, 70 N.M. 380, 374 P.2d 134 ("To permit the defendant to invoke the doctrine of estoppel against a situation created by his own fraud would certainly not be in keeping with the principles of equity and it is a fundamental principle of equity that no one can take advantage of his own wrong.").

{10} Consistent with those views, New Mexico courts have applied the doctrine of

fraudulent concealment. *See, e.g.*, *Kern ex rel. Kern v. St. Joseph Hosp., Inc.*, 1985-NMSC-031, ¶¶ 10-11, 102 N.M. 452, 697 P.2d 135 (discussing fraudulent concealment in the context of medical malpractice). In New Mexico, the doctrine of fraudulent concealment is distinct from but is nonetheless grounded "upon the principle of equitable estoppel. The theory is premised on the notion that the one who has prevented the plaintiff from bringing suit within the statutory period should be estopped from asserting the statute of limitations as a defense." *Id.* ¶ 10 (citations omitted). A plaintiff alleging fraudulent concealment carries the burden to establish all facts necessary to prove it. *See id.* ¶ 12. To toll a statutory limitations period under the doctrine of fraudulent concealment, the plaintiff must prove that (1) the defendant knew of the alleged wrongful act and concealed it from the plaintiff or had material information pertinent to its discovery which he failed to disclose, and (2) the plaintiff did not know, or could not have known through the exercise of reasonable diligence, of the cause of action within the statutory period. *Id.*; *see also Tomlinson v. George*, 2005-NMSC-020, ¶¶ 13, 15, 138 N.M. 34, 116 P.3d 105 (concluding that fraudulent concealment did not preclude the defendant from asserting the limitations period as a defense because the defendant did not prevent the plaintiff from filing suit within the statutory period). If the plaintiff meets the burden of proof and the

7

doctrine tolls the statutory limitations period, "the statute commences to run again when the [plaintiff] discovers, or through the exercise of reasonable diligence should have discovered, the [cause of action]." *Tomlinson*, 2005-NMSC-020, ¶ 13.

{11} Defendants rely on a number of New Mexico cases addressing statutes of limitations. But in so doing, Defendants misperceive the nature of fraudulent concealment and its distinct place in our jurisprudence. The doctrine of fraudulent concealment, a type of equitable tolling, is distinct from the doctrine of equitable estoppel. The two doctrines, while related, apply in different circumstances.

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim. In contrast, the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.

*Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001).

{12} Put another way,

> The difference between [equitable] estoppel and fraudulent concealment, as generally articulated, is this: fraudulent concealment applies when the plaintiff lacks actual or constructive notice of his or her claim, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statement or conduct in failing to bring suit.

8

*Towne v. Robbins*, 339 F. Supp. 2d 1105, 1117 (D. Or. 2004) (internal quotation marks and citations omitted).[1]

{13}    Equitable estoppel and equitable tolling thus both serve to toll the limitations period for the duration of a defendant's fraud or a plaintiff's reliance, as applicable, but these doctrines do not affect the date on which a cause of action accrues. *See generally Kern*, 1985-NMSC-031, ¶ 12 (explaining the burden of proof to be carried by a plaintiff seeking to toll the statutory limitation period). In contrast, a discovery rule actually serves to set the date on which a cause of action accrues to (as the name suggests) the date on which the cause of action was discovered or should have been discovered with the exercise of diligence. *Maestas v. Zager*, 2007-NMSC-003, ¶ 1, 141 N.M. 154, 152 P.3d 141.

{14}    While we have not had the opportunity to provide the contrasting definitions of these terms before now, the New Mexico courts have consistently treated the

---

[1]We recognize that some courts have used the term fraudulent concealment to describe both the tolling of a limitations or repose period "based on a defendant's misconduct" and to describe the type of estoppel that applies to "deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline." *Shropshear*, 275 F.3d at 595-97. But given that the latter involves concealment of nothing other than the defendant's "bad intent," *id.* at 597, we believe there will be less confusion if we limit the use of the term fraudulent concealment in the statute of limitations context to equitable tolling.

different doctrines as distinct. In *Kern*, a medical malpractice case where the defendant concealed the cause of the plaintiff's injury, we held that the doctrine of fraudulent concealment may serve to toll the limitations period. 1985-NMSC-031, ¶¶ 13-14; *see also Tomlinson*, 2005-NMSC-020, ¶¶ 15 (holding that where the plaintiff learned of the defendant's concealment of the cause of the injury before the limitations period had ended the doctrine of fraudulent concealment did not toll the statutory time). And in *Perry v. Staver*, 1970-NMCA-096, ¶ 11, 81 N.M. 766, 473 P.2d 380, where the plaintiff alleged that the defendant had indicated that he would not rely on a statute of limitations defense and the plaintiff had relied on that assertion, the Court of Appeals considered (and ultimately rejected) the plaintiff's argument that equitable estoppel should toll the limitations period. In that case, there was no mention of the doctrine of fraudulent concealment. *See id.*

{15}     We have likewise distinguished fraudulent concealment from a discovery rule. In *Clark v. Lovelace Health Systems, Inc.,* 2004-NMCA-119, ¶¶ 9, 20, 136 N.M. 411, 99 P.3d 232, the plaintiffs argued that the date of accrual of their wrongful death action was the date upon which they learned of, or should have with due diligence learned of, the injury and its cause, but the Court of Appeals declined to apply the discovery rule to the wrongful death act. *See Kern*, 1985-NMSC-031, ¶ 11

10

(specifying under the discovery rule that the statute begins to "run again" when the plaintiff discovers, or through the exercise of due diligence should have discovered, the malpractice). In *Tomlinson*, a malpractice case, the defendant concealed his misconduct, but the plaintiff discovered the cause of action just four months into the three-year limitations period, and the doctrine of fraudulent concealment did not save the untimely action brought after the three-year limitations period had ended. *Tomlinson*, 2005-NMSC-020, ¶ 12. The Plaintiff argued that a discovery rule should apply, so that her cause of action would not accrue until the date she discovered the cause, but we disagreed. *Tomlinson*, 2005-NMSC-020, ¶¶ 12-14.[2]

{16} Limitations periods are intended to encourage plaintiffs to diligently pursue a claim once an injury has been discovered. The doctrine of fraudulent concealment properly balances the principle of stopping defendants from benefitting from fraudulent concealment that prevents plaintiffs from filing claims, while continuing to require plaintiffs to exercise ordinary diligence in pursuit of a cause of action. *See Tomlinson*, 2005-NMSC-020, ¶ 26. In *Tomlinson*, we explained that "an unduly

---

[2]In *Tomlinson*, we referred to this type of fraudulent concealment as a tolling mechanism and a type of estoppel. *See* 2005-NMSC-020, ¶¶ 13-14. We now clarify that fraudulent tolling is a type of equitable tolling.

11

long" limitations period, or one that relied upon a discovery based accrual date, "would place an unfair burden on the medical profession." 2005-NMSC-020, ¶ 8 (internal quotation marks and citation omitted). We observed that the New Mexico Legislature had carefully balanced the need for citizens to have an opportunity to bring a timely malpractice case where appropriate with the need to prevent insurance carriers from withdrawing medical malpractice liability coverage in New Mexico. *Id.*

{17}   In balancing these competing concerns, we concluded that the Legislature intended to create an exception to the three-year limitations period in the case of fraudulent concealment, but did not intend to subject "'health care providers [to] the much greater liability exposure that would flow from a discovery-based accrual date.'" *Id.* (quoting *Roberts v. Sw. Cmty. Health Services*, 1992-NMSC-042, ¶ 14). Finally, after qualifying the role of discovery rules in cases of fraudulent concealment, we concluded that the doctrine of fraudulent concealment applies to claims brought under the Medical Malpractice Act but that the discovery rule did not apply in that case. *Tomlinson*, 2005-NMSC-020, ¶ 26.

**B.     Wrongful Death Act**

{18}   Wrongful death actions were not permitted at common law based on the belief

that the right of recovery died with the injured party and on the theory that a person harmed by another's death had no right to recover. *See, e.g., Baker v. Bolton* (1808) 170 Eng. Rep. 1033 ("In a civil Court, the death of a human being could not be complained of as an injury, and in this case the damages, as to the plaintiff's wife, must stop with the per[i]od of her existence."); *see also* Wex S. Malone, *The Genesis of Wrongful Death*, 17 Stan. L. Rev. 1043, 1044 (1965). Scholars attribute the rise of wrongful death actions in the nineteenth century to a shift from unnatural deaths caused by person-to-person violence, to "a virtually new phenomenon—accidental death through corporate enterprise." *Id.* at 1043 ("Tragedy as a result of indifference and neglect was suddenly upon us in the factory, on the city streets, and on the rails. Nor was the . . . villain of the piece any longer the impecunious felon. In his place stood the prospering corporation with abundant assets to meet the needs of widows and orphans."). As a result of these developments, the rationale behind prohibiting causes of actions in wrongful death cases was no longer persuasive, and wrongful death statutes became widespread across the country. The United States Supreme Court observed almost half a century ago that

> [t]hese numerous and broadly applicable statutes, taken as a whole,
> make it clear that there is no present public policy against allowing
> recovery for wrongful death. The statutes evidence a wide rejection by

13

the legislatures of whatever justifications may once have existed for a general refusal to allow such recovery. This legislative establishment of policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law.

*Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 390-91 (1970).

**1.      The plain language, history, and purpose of New Mexico's WDA**

{19}    New Mexico adopted its Wrongful Death Act (WDA) in 1882. *See* 1882 N.M. Laws ch. 61, § 2. In New Mexico, actions for wrongful death are controlled by Sections 41-2-1 to -4. Section 41-2-1 provides,

>      Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

{20}    Consistent with the enactment of similar statutes across the nation, New Mexico's WDA was intended to replace the common-law rule barring recovery in cases of wrongful death so as to allow recovery and to discourage and punish negligent behavior by corporations. This Court has articulated a two-fold purpose

14

behind the WDA: (1) "to compensate the statutory beneficiaries and to deter negligent conduct" (*Romero v. Byers*, 1994-NMSC-031, ¶ 17, 117 N.M. 422, 872 P.2d 840), and (2) to "promote safety of life and limb by making negligence that causes death costly to the wrongdoer." *Stang v. Hertz*, 1970-NMSC-048, ¶ 9, 81 N.M. 348, 467 P.2d 14; *see also Trujillo v. Prince*, 1938-NMSC-024, ¶ 17, 42 N.M. 337, 78 P.2d 145 ("[The WDA] has to some degree an objective of public punishment and was designed in part at least to act as a deterrent to the negligent conduct of others and thereby promote the public safety and welfare.").

{21}    Section 41-2-2 of the WDA provides a statutory period of limitation on wrongful death actions: "Every action instituted by virtue of the provisions of this and the preceding section [41-2-1 NMSA 1978] must be brought within three years after the cause of action accrues. The cause of action accrues as of the date of death." The limitations provision of the WDA has undergone multiple revisions since its enactment in 1882. The original 1882 version included a limitation on actions for one year: "Every action instituted by virtue of the provisions of this act must be brought within one year after the cause of action shall have accrued . . . ." 1882 N.M. Laws, ch. 61, § 9. The original statute was silent regarding whether the cause of action accrued when the injury occurred or upon the decedent's death. In 1887 the

15

Legislature repealed the limitations section. 1887 N.M. Laws, ch. 2, § 7. Then, in 1889, the Legislature reinstated the original limitations section. 1889 Laws, ch. 75, § 4; *see also Gallegos v. Atchison, T.&S.F.Ry. Co.*, 1923-NMSC-032, ¶¶ 6-8, 28 N.M. 472, 214 P. 579 (explaining that "the repeal of [the] repealing act" revived the original one-year limitations period in the WDA).

{22}     Since 1889, the Legislature has amended the limitation period of the WDA twice in response to judicial decisions. In *Natseway v. Jojola*, this Court held that the beneficiaries' cause of action accrued under the WDA when the decedent was injured, not when the decedent died. *See* 1952-NMSC-104, ¶¶ 21, 26, 56 N.M. 793, 251 P.2d 274, *superseded by statute*, 1961 N.M. Laws ch. 202, § 1, as recognized in *State Farm Mut. Auto. Ins. Co. v. Luebbers*, 2005-NMCA-112, 138 N.M. 289, 119 P.3d 169. This meant that an action for wrongful death could be barred by the one-year limitations restriction in the WDA even before the death had occurred. In 1953, following *Natseway*, the Legislature extended the limitations period from one year to three years. 1953 N.M. Laws, ch. 30, § 1; NMSA 1953, § 22-20-2. In *Kilkenny v. Kenney*, we again held that the new three-year limitations provision ran from the date of injury, rather than the date of death. *See* 1961-NMSC-019, ¶¶ 6-14, 68 N.M. 266, 361 P.2d 149, *superseded by statute*, 1961 N.M. Laws, ch. 202, § 1. Following

16

*Kilkenny*, the Legislature amended the WDA in 1961 to specify that a "cause of action accrues as of the date of death," 1961 N.M. Laws, ch. 202, § 1, providing plaintiffs three years from the decedent's death to bring an action under the WDA.

{23} While the WDA sets forth a statute of limitations, it does not speak to whether fraudulent concealment applies. Therefore, we look to the context in which the words of the 1961 enactment were written to determine the legislature's intent.

**2. When the appropriate showing is made, fraudulent concealment applies to an action under the WDA**

{24} As it often does after establishing a statutory general principle, the legislature has left it to us to provide the nuances involved in the statute's practical application. *See State v. Olsson*, 2014-NMSC-012, ¶¶ 45-47, ¶ 50 (Chavez, J., dissenting) (explaining a court's role in resolving ambiguous statutory language ), 324 P.3d 1230. As Defendants observe, the WDA is "an expression of legislative policy."

{25} In 1889, when the Legislative Assembly reinstated the limitations provision in the WDA, it was on notice that the common-law doctrine of fraudulent concealment existed as part of the common law of New Mexico. *See* NMSA 1978, § 38-1-3 (1876, amended 1915) (recognizing the common law as "the rule of practice and decision" in New Mexico courts). And the Legislative Assembly did not

17

expressly address applicability of the doctrine. *See Sims v. Sims*, 1996-NMSC-078, ¶ 24, 122 N.M. 618, 930 P.2d 153 ("In relying upon the common law to resolve statutory omissions and ambiguities, we presume the legislature was well informed about the existing common law before the statute was enacted and did not intend to enact a statute that conflicted with the common law."); *Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n*, 1992-NMSC-022, ¶ 12, 114 N.M. 78, 835 P.2d 76 (noting that we interpret a statute "as the [L]egislature understood it at the time it was passed"). Therefore, as this Court explained in *Sims*, the common law remains in place to fill gaps not addressed expressly by a statute. 1996-NMSC-078, ¶ 23 ("[T]he common law, upon its adoption, came in and filled every crevice, nook and corner in our jurisprudence where it had not been stayed or supplanted by statutory enactment, in so far as it was applicable to our conditions and circumstances." (internal quotation marks and citation omitted)).

{26} Accordingly, the common-law doctrine of fraudulent concealment remains in place to fill the gap left by the plain language of the WDA, which does not expressly address this issue. *See Moragne*, 398 U.S. at 391 (1970) ("It has always been the duty of the common-law court to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common law

principles."). This is consistent with New Mexico's public policy to discourage fraud. As we noted in *Tomlinson*, "[f]raudulent conduct has always provided equitable grounds for relaxing a statutory time limit." 2005-NMSC-020, ¶ 9 (internal quotation marks and citation omitted).

{27} In accordance with this public policy, New Mexico courts have held that the doctrine of fraudulent concealment applies to toll the limitations period for other New Mexico statutes, including the Medical Malpractice Act, NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2015), *see, e.g., Kern*, 1985-NMSC-031, ¶ 10, and the Tort Claims Act, NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015), *see, e.g., Armijo v. Regents of Univ. of N.M.*, 1984-NMCA-118, ¶ 20, 103 N.M. 183, 704 P.2d 437, *rev'd on other grounds*, 1985-NMSC-057, 103 N.M. 174, 704 P.2d.

{28} The Legislature intends to require plaintiffs to exercise ordinary diligence, not extraordinary clairvoyance. Because our role is to discern and effectuate the contours of legislative policy, and the policy supporting the WDA was to provide litigants a fair opportunity to present their claims in a timely fashion, we conclude that the Legislature must have intended that the doctrine of fraudulent concealment applies to a WDA case where the appropriate requisites are met.

{29} Defendants remind us that we should not "alter" legislative choices even where

19

they are "unjust" or "absurd." But here we do not "alter" a legislative choice; to the contrary, we follow one. At oral argument, Defendants could articulate no explanation as to why the Legislature would not have intended fraudulent concealment to apply to the WDA, and we can discern no rational reason that the Legislature would not have intended the doctrine's application.

{30} Adopting a strict construction of the WDA, as argued by Defendants, would defeat the remedial purpose of the act:

> It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system.

*Van Beeck v. Sabine Towing Co.*, 300 U.S. 342, 350-51 (1937) (footnote omitted). It is consistent with the purpose of the WDA to toll the statutory limitations period where a defendant has fraudulently concealed the cause of action. Put another way, allowing a defendant to conceal a cause of action and then assert the statute of limitations as a defense would be contrary to the intent behind the WDA. The Legislature did not intend for statutory beneficiaries to be uncompensated in cases where the tortfeasor kept them from learning that they had a cause of action. Far from deterring negligent conduct, barring a plaintiff's cause of action, even in light of a

20

defendant's fraudulent concealment, tells tortfeasors that they may escape civil liability so long as they successfully conceal their wrongdoings for three years. Rather than promoting safety of life and limb by making negligence that causes death costly to the wrongdoer, the wrongdoer would avoid any cost incurred by its negligent conduct by merely hiding evidence of the conduct for a set period of time. In light of the purpose behind the WDA, the Legislature could not have intended for defendants to be entitled to hide behind fraudulent concealment. Indeed, we will neither sanction fraud nor presume the Legislature intended to do so by allowing a party to conceal a wrong until the statute of limitations has run and then benefit from the deception. Having considered the plain language, history, and purpose of the WDA, we conclude that the Legislature intended for the doctrine of fraudulent concealment to apply to wrongful death actions.

**3.    Missouri Supreme Court's interpretation of its wrongful death act**

{31}    Defendants also argue that the Missouri Courts' conclusion that fraudulent concealment applies to the Missouri WDA does not compel the same conclusion here. Specifically, Defendants maintain that a crucial difference between the New Mexico and the Missouri wrongful death acts regarding the accrual date of a cause of action renders Missouri law inapplicable to New Mexico. In *O'Grady v. Brown*, the

Missouri Supreme Court observed that, much like New Mexico's WDA, the purpose of Missouri's wrongful death act is "to provide compensation to bereaved plaintiffs for their loss, to ensure that tortfeasors pay for the consequences of their actions, and generally to deter harmful conduct which might lead to death." *O'Grady v. Brown*, 654 S.W.2d 904, 909 (Mo. 1983) (en banc). *O'Grady* sought to "apply the statutory language with a view to promoting the apparent object of the legislative enactment." *Id.* (internal quotation marks and citation omitted). More recently, Missouri courts have held that the doctrine of fraudulent concealment applies to wrongful death actions in Missouri. *See e.g.*, *State ex rel. Beisly v. Perigo,* 469 S.W.3d 434, 445 (Mo. 2015).

{32}    In the past we have found the Missouri Supreme Court's interpretation of its wrongful death act helpful in ascertaining the legislative intent behind New Mexico's WDA. *See Langham v. Beech Aircraft Corp.*, 1975-NMSC-064, ¶ 19, 88 N.M. 516, 543 P.2d 484 ("Our wrongful death statutes were taken from Missouri and this [C]ourt has often followed the views of the Missouri Supreme Court in its interpretations of these statutes."). Regardless of whether Missouri's conclusion that fraudulent concealment will toll its wrongful death statute's limitation period is "presumed" to guide our decision here or is merely "entitled to respectful

22

consideration" (*Cain v. Bowlby*, 114 F.2d 519, 523 (10th Cir. 1940)), our conclusion would be the same. *But see Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 13, 315 P.3d 298 ("Missouri's [wrongful death act's] historical relevance to our Act has ended.").

**4.      The parties' statutory construction arguments elevate form over substance and do not aid the analysis here**

{33}    The parties, focusing less on the history and purposes of the statute and more on peripheral rules of statutory construction, devote portions of their briefs to arguing which of these rules of statutory construction control. Plaintiff argues that the WDA is remedial legislation, enacted in derogation of the common law, and that statutes in derogation of common law are generally strictly construed. But, Plaintiff continues, where a statute is both remedial and in derogation of common law the question of whether the statute modifies common law is to be strictly construed and, if the statute does modify common law, its application should be liberally construed. Defendant argues that the WDA statute of limitations must be strictly applied, because it altered the common-law rule barring recovery for a wrongful death. We are not persuaded that either construction aids or materially affects our analysis here. We will not interpret statutes to change the common law unless they do so with clarity. There is

23

no more reason to reject a fair reading that changes the common law than there is to reject a fair reading that repeals an earlier statute. Indeed, "[t]here is no hierarchical difference between common law rules which are based on statutory enactments and common law rules which are based in judicial decisions." *Hanebuth v. Bell Helicopter Int'l*, 694 P.2d 143, 146 (Ala. 1984) (stating that wrongful death statutes "should be liberally construed to accomplish their remedial purpose," not "crippled . . . by . . . a narrow construction on the basis that these statutes are in derogation of the common law") (internal quotation marks and citation omitted); *see also* Dennis M. Doiron, *A Better Interpretation of the Wrongful Death Act*, 43 Me. L. Rev. 449, 459 (1991) ("[T]he rule of strict construction, as specifically applied to [Maine's] wrongful death act, is no longer appropriate because contemporary common law principles overwhelmingly support recovery for wrongful death."). The Defendants' statutory construction arguments here elevate "formalistic legal abstraction[s]" (*Hanebuth*, 694 P.2d at 145-46 (internal quotation marks and citations omitted)), above reason, logic, and equity.

{34}     We are not presented here with an issue of stare decisis. Nor does "New Mexico jurisprudence . . . point[,] ineluctably" or otherwise, to the conclusion Defendant urges here, that New Mexico's historically strict application of statutes of

24

limitation prohibits application of the doctrine of fraudulent concealment here. It is true, as Defendants observe, that we have declined to read terms into the WDA's limitation provision. For example, in *Kilkenny*, 1961-NMSC-019, ¶¶ 7-14, *Natseway*, 1952-NMSC-104, ¶ 26, and *State ex rel. DeMoss v. District Court of the Sixth Judicial District*, 1951-NMSC-010, ¶ 9, 55 N.M. 135, 227 P.2d 937, we declined to adjust the statutorily dictated date of accrual of the cause of action. But here we are not reading an exception into the statute or changing a legislative choice. Rather, we are carrying out the Legislature's intent that the common-law doctrine of fraudulent concealment applies to the limitations provision of the WDA.

{35}    In fact, the amendments following *Kilkenny* and *Natseway* demonstrate the Legislature's intent to expand the class of statutory beneficiaries who may recover under the WDA; applying the doctrine of fraudulent concealment to the WDA limitations period is consistent with such an intent. Defendants argue that it is the Legislature's role, not this Court's role, to determine whether a tolling provision applies to the WDA. Defendants rely, in part, on *Kilkenny* and *Natseway*, observing that in those cases we refused to conclude that the date of death was the accrual date for purposes of the limitation provision of the WDA and left it to the Legislature to alter the statute. In response to these cases, the Legislature did amend the WDA by

25

explicitly stating that a cause of action under this statute accrues as of the date of death. *See* 1961 Laws, ch. 202, § 1. The outcomes in *Kilkenny* and *Natseway* reflect the general purpose behind statutes of limitations, which is to protect defendants from having to defend against stale claims and to ensure that plaintiffs timely pursue claims. *See Garcia v. LaFarge*, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428. In contrast, here we focus on fraudulent concealment, a doctrine which prevents defendants from benefitting from their own misconduct. *See, e.g., Kern*, 1985-NMSC-031, ¶ 10.

{36} Nor are we persuaded by Defendants' reliance on two cases from the Court of Appeals. As discussed earlier, in *Perry v. Staver*, the plaintiff initially filed his wrongful death claim in the wrong county. *See* 1970-NMCA-096, ¶ 19. The defendants moved to dismiss, and the district court dismissed with prejudice. *See id.* ¶¶ 3, 19. The plaintiff moved to vacate the dismissal, and the district court issued an order directing the defendants to show cause why the order dismissing with prejudice should not be set aside. *See id.* ¶3. In their response, the defendants stated that the dismissal "does not prevent" the plaintiff "from taking any action separate and apart from this cause." *Id.* ¶ 4 (internal quotation marks omitted).

{37} The district court vacated and set aside the original dismissal order and instead

26

dismissed without prejudice. *See id.* ¶ 5. The plaintiff next filed his wrongful death action in the correct county, and this time the defendants moved to dismiss because the limitations period in the WDA had run. *See id.* ¶¶ 3-9. The district court dismissed again, and the plaintiff appealed to the Court of Appeals. *See id.* ¶ 6. On appeal, the plaintiffs argued, in part, that the defendant was estopped from asserting a statute of limitations defense because the defendant's language in response to the earlier order to show cause—specifically, the defendants' statement that the dismissal did not prevent the plaintiff from taking any separate action—amounted to a waiver of that defense. *See id.* In addition to rejecting the plaintiff's waiver argument on the facts, the Court of Appeals held that the doctrine of equitable estoppel did not apply to the WDA. *See id.* ¶¶ 3-9. The Court concluded that "[e]stoppel cannot be successfully asserted to lengthen the existence of such a statutorily created right of recovery." *See id.* ¶ 6.

{38} Because the issue in *Perry* was equitable estoppel, not fraudulent concealment, *Perry* is inapposite to our decision here. As we have explained, the two doctrines are different. Only fraudulent concealment concerns itself with a defendant's willful, deceitful conduct, and it is consistent with the history and purpose of the WDA that the Legislature intended to apply fraudulent concealment to the limitations provision

27

of the WDA. *See id.* ¶ 11.

{39}   *Clark* supports our conclusion here. In *Clark,* the decedent, who suffered from severe obstructive sleep apnea, died after taking a number of medications in combination, including methadone and Propulsid. *See* 2004-NMCA-119, ¶ 2. Following an autopsy the medical examiner concluded that it was methadone intoxication that had caused the decedent's death. *See id.* Two years later the FDA announced that Propulsid would be discontinued due to its association with reports of heart abnormalities and deaths. *See id.* The plaintiffs filed their initial complaint, against the doctors who had been treating the decedent, in a timely manner. *See id.* The plaintiffs deposed one of two doctors involved in prescribing the multiple medications a little after three years past the decedent's death. *See id.* ¶ 3.

{40}   In his deposition, that doctor testified that he did not know what killed the decedent but that Propulsid would be "at the top of his list." *Id.* That doctor explained that it would not have been known at the time of the autopsy that Propulsid should be considered a suspect in the decedent's death, but at the time of the deposition Propulsid would be blamed if there was no other "obvious explanation." *See id.* (internal quotation marks omitted). The plaintiffs amended their complaint to add two pharmaceutical companies as defendants in their products liability claim,

28

but these defendant successfully moved to dismiss based on the fact that the amended complaint had been filed more than three years after the decedent had died. *See id.* ¶¶ 3-4.

{41}     On appeal to the Court of Appeals, the plaintiffs urged the Court to apply the discovery rule to the WDA and to conclude that their cause of action accrued on the date they learned that Propulsid and the two additional defendants may have caused the injury that led to the decedent's death. *See id.* ¶¶ 3-5. The Court of Appeals declined to apply the discovery rule to the WDA. *See id.* ¶ 20. But in distinguishing some of the out-of-jurisdiction authority the plaintiffs relied upon in that case, the Court observed that many of those cases involved "exceptional circumstances or situations where it was impossible for the plaintiff to know the cause of the decedent's death in order to be able to timely file a wrongful death claim" (*id.* ¶ 16), suggesting that such circumstances might require a different result. Accordingly, while holding that the discovery rule was inapplicable to the WDA, the Court indicated that it may have decided the case differently if the defendant's conduct had amounted to fraudulent concealment. *See Id.*

{42}     We conclude that neither *Perry* nor *Clark* compels the conclusion that the doctrine of fraudulent concealment may not apply to the WDA. To the extent that

29

either opinion is inconsistent with our decision today it is overruled.

**III.    Conclusion**

{43}    We hold that the doctrine of fraudulent concealment may toll the three-year statute of limitations period for wrongful death actions in New Mexico. However, we do not determine whether Defendants fraudulently concealed Plaintiff's cause of action.  On remand the district court shall determine if the limitations period set forth in Section 41-2-2 was tolled until Plaintiff had actual knowledge of its cause of action or, through reasonable diligence, Plaintiff could have learned it had a cause of action.

{44}    **IT IS SO ORDERED.**

 

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

30

_____

**BARBARA J. VIGIL, Justice**


**JUDITH N. NAKAMURA, Justice, not participating**

31