The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: May 1, 2025

**NO. S-1-SC-40416**

**TODD LOPEZ, as Personal Representative of the Wrongful Death Estate of RICHARD PAIZ and LORETTA PAIZ, individually,**

   Plaintiffs-Respondents,

v.

**PRESBYTERIAN HEALTHCARE SERVICES, HOSPITALIST MEDICINE PHYSICIANS OF TEXAS, PLLC d/b/a SOUND PHYSICIANS HOLDINGS LLC, KENNETH DALE, and KARAN MAHAJAN,**

   Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Francis J. Mathew, District Judge**

Priest & Miller, LLP
Ada B. Priest
Sydney L. Jans
Albuquerque, NM

Miller Stratvert P.A.
Jennifer D. Hall
Kelsey D. Green
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn C. Drennan
Jeffrey M. Croasdell
Albuquerque, NM

for Petitioners

Bruce E. Thompson Law Firm, P.C.
Bruce E. Thompson
Albuquerque, NM

The Law Office of Amalia S. Lucero, L.L.C.
Amalia S. Lucero
Placitas, NM

for Respondents

**OPINION**

**THOMSON, Chief Justice.**

{1}     At common law, any cause of action for a tort resulting in death died with the plaintiff. *Chavez v. Regents of Univ. of N.M.*, 1985-NMSC-114, ¶ 7, 103 N.M. 606, 711 P.2d 883. In 1882, the Legislature abrogated that common-law principle by enacting the Wrongful Death Act (WDA or the Act), creating a right of recovery for statutory beneficiaries and accountability for a tortfeasor's actions resulting in death. *See* NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001);[1] *Romero v. Byers*, 1994-NMSC-031, ¶ 15, 117 N.M. 422, 872 P.2d 840 ("By prior common law, a right of action for personal injuries was extinguished by the death of the person injured, and no civil action could be maintained for a tort resulting in death. Legislative enactment of the [WDA] created a new cause of action in derogation of the common law." (citations omitted)). To facilitate actions under the WDA, the Act requires that "[e]very action mentioned in [the WDA] *shall be brought by and in the name of the personal representative of the deceased person*." Section 41-2-3 (emphasis added).

---

[1]The WDA provides, "Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, . . . then . . . the person who . . . would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured." Section 41-2-1.

{2}     We resolve the question of whether failure to petition for appointment of a WDA Personal Representative (WDA PR or PR) deprives a court of subject matter jurisdiction under the Statutory Standing Rule that, "'[W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action.'" *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 11, 369 P.3d 1046 (quoting *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9 n.1, 144 N.M. 471, 188 P.3d 1222). Here, the district court applied the Statutory Standing Rule to conclude that it lacked subject matter jurisdiction over Plaintiff who failed to petition for appointment as the PR until after the case was filed. We disagree with that application of the Statutory Standing Rule. Neither the text of the WDA nor the role of PRs in wrongful death actions supports the conclusion that a PR's failure to petition for formal appointment as the WDA PR at or before the time of filing the complaint deprives the PR of standing and a court of jurisdiction. We affirm the Court of Appeals' reversal of the district court, and clarify the application of the Statutory Standing Rule to the WDA.

**I.      BACKGROUND**

{3}     The lawsuit arose out of the alleged wrongful death of Richard Paiz following his care with Presbyterian Healthcare Services (Presbyterian). Respondent, Todd

Lopez (Lopez), filed WDA claims against Petitioners Presbyterian and Hospitalist Medicine Physicians of Texas, PLLC, d/b/a Sound Physicians Holdings, LLC (Sound Physicians), identifying himself in the caption of the complaint as "Todd Lopez, as Personal Representative of the Wrongful Death Estate of Richard Paiz." After discovery revealed that Lopez never petitioned for appointment as Mr. Paiz's WDA PR, Lopez subsequently moved for appointment as the WDA PR and substitution as the real party in interest under Rule 1-017(A) NMRA. Presbyterian and Sound Physicians opposed the motion, arguing that Lopez failed to comply with the requirements of Rule 1-017(B) NMRA for appointing a WDA PR and that Lopez had not highlighted a mistake of fact justifying substitution under Rule 1-017(A). The district court ordered supplemental briefing on jurisdiction, directing the parties to the Statutory Standing Rule as articulated in *Johnston*. 2016-NMSC-013, ¶¶ 10-11 (stating that "when a statute creates a cause of action, . . . [s]tanding is a jurisdictional prerequisite to" bringing that action). Following a hearing on the parties' briefing, the district court dismissed the WDA claims, reasoning that, absent appointment as the PR, Lopez did not have standing to bring the claims under the WDA and that the court, therefore, lacked subject matter jurisdiction over the case under the Statutory Standing Rule. The district court certified the issue for interlocutory appeal.

{4}     On interlocutory appeal, the Court of Appeals reversed after conducting its own standing analysis under the WDA with Judge Bustamante specially concurring. *Lopez v. Presbyterian Healthcare Servs.*, 2024-NMCA-055, ¶ 19, 553 P.3d 481. The Court reasoned that it is the *decedent* who has standing under the WDA but lacks capacity, so the WDA designates the PR as a nominal party to facilitate the lawsuit. *See id*. Given the purely administrative role of WDA PRs, the court concluded, the proper remedy was that articulated in this Court's opinion in *Chavez*: that where there is a defect in the ministerial act of appointing a WDA PR, the solution is to substitute a properly appointed PR as the real party in interest and relate that substitution back to the filing of the complaint where the requirements of Rule 1-015 NMRA and Rule 1-017 are satisfied. *Id.* ¶¶ 21-22 (citing *Chavez*, 1985-NMSC-114, ¶ 8). Presbyterian and Sound Physicians appealed and argue that this Court's reasoning in *Chavez* has been analytically superseded by the emergence of the Statutory Standing Rule and an amendment to Rule 1-017 clarifying the requirements for appointing a WDA PR.

**II.     DISCUSSION**

{5}     We agree with the Court of Appeals that failure to petition for appointment as the WDA PR at or before the time of filing is not a jurisdictional defect warranting dismissal under the Statutory Standing Rule. We arrive at our conclusion, however,

4

based on the plain language of the WDA and our courts' longstanding interpretation of that Act. Put simply, while the Legislature may impose limitations on a court's review of causes of action that the Legislature itself created by specifying who may sue, it has not imposed requirements on the time and manner of a WDA PR's appointment necessary for the PR to secure standing and for a court to hear the claims.

## A. Statutory Standing and Subject Matter Jurisdiction

{6} Article VI, Section 13 of the New Mexico Constitution provides, "The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as provided by law." Article VI, Section 13 of the New Mexico Constitution grants district courts two distinct forms of subject matter jurisdiction: jurisdiction over common-law claims and jurisdiction over claims created by statute. *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶ 20, 390 P.3d 174 ("New Mexico courts have general subject matter jurisdiction over common-law claims."); *Ottino v. Ottino*, 2001-NMCA-012, ¶ 7, 130 N.M. 168, 21 P.3d 37 ("[T]he district court is possessed of two forms of jurisdiction: original and statutory.").

{7} Requirements for standing under each form of jurisdiction are distinct. Standing is prudential in common-law causes of action, "imposed not by the

Constitution or by statute but by the judicial branch on itself to serve judicial economy and the proper—and properly limited—role of courts in a democratic society." *Phoenix Funding*, 2017-NMSC-010, ¶ 20 (internal quotation marks and citation omitted). Accordingly, standing in common-law cases is not jurisdictional. *Id.* ¶ 18 ("Because the requirement of a plaintiff's standing is not derived from a constitutional limitation of the judiciary to decide cases or controversies, it is not a jurisdictional prerequisite.").

{8} In contrast, standing is a jurisdictional prerequisite for causes of action created by statute. Indeed, where "the Legislature empowers the courts to adjudicate a new kind of claim . . . , the Legislature may condition the exercise of that power on the plaintiff's satisfaction of certain prerequisites." *Id.* ¶ 19. Standing in such cases is governed by the language of the statute rather than prudential considerations. *Prot. & Advoc. Sys., Inc. v. Presbyterian Healthcare Servs.*, 1999-NMCA-122, ¶ 21, 128 N.M. 73, 989 P.2d 890 ("In the case before us, however, we do not conduct our own analysis of prudential considerations, because standing is governed by specific statutory language.").

{9} In this case, the Court of Appeals applied prudential standing factors to determine standing under the WDA, concluding that because the PR did not suffer the injury alleged against the tortfeasor and does not have any interest in the

6

litigation, standing does not rest with the PR. *Lopez*, 2024-NMCA-055, ¶¶ 18-19 ("The WDA grants the PR no cause of action, the PR has no injury in fact, and no interest of the PR's is protected by the WDA."). To support its conclusion, the Court of Appeals reads this Court's opinion in *Key* as incorporating prudential considerations into its statutory standing analysis. *See Lopez*, 2024-NMCA-055, ¶ 14 (citing *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 11, 121 N.M. 764, 918 P.2d 350).

{10} This is problematic, however, because *Key* does not, in fact, distinguish between statutory standing and the question of whether a statute contemplates a cause of action, asserting that there is, in fact, no distinction between the two. *See Key*, 1996-NMSC-038, ¶¶ 10-11 (reasoning that "[w]hether we ask if Key had standing to sue or whether we ask if the Act provided Key with a cause of action, we must look to the Legislature's intent as expressed in the Act or other relevant authority"). Despite *Key*'s treatment of the two concepts, courts have since treated statutory standing as a unique inquiry and more clearly developed the "zone of interests" analysis, which looks to whether a statute contemplated a cause of action for a particular *injury*. *Id.* ¶ 11 (internal quotation marks and citation omitted); *see Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 8, 453 P.3d 434 ("[The parties] argue over whether the UPA contemplates *competitor standing*.

7

However, a more precise framing of the issue is whether the UPA creates a cause of action to recover lost profits damages from a competitor.").

{11} While both the statutory standing and zone of interests analyses shape standing under a particular statute, each asks a different question; zone of interests asks whether the plaintiff has alleged a cognizable injury under the statute while statutory standing asks whether the plaintiff has satisfied certain statutory preconditions to judicial review. Indeed, a close reading of *Key* reveals its nature as a case that incorporated prudential considerations into analyzing whether a statute contemplates a particular cause of action for a particular class of plaintiffs. *See Key*, 1996-NMSC-038, ¶¶ 29-32, 35-38, 41. Accordingly, the Court of Appeals' use of prudential considerations was not proper when applying the Statutory Standing Rule, which only looks to the text of the statute to determine standing. *Prot. & Advoc. Sys., Inc.*, 1999-NMCA-122, ¶ 21 ("In the case before us, however, we do not conduct our own analysis of prudential considerations, because standing is governed by specific statutory language.").

{12} Zeroing in on the development of the Statutory Standing Rule as a distinct analysis, the parties and Court of Appeals' concurrence leverage the history of the Statutory Standing Rule as a distinct doctrine in contrasting ways. Lopez and the Court of Appeals' concurrence assert that the Rule first appeared in a footnote in

*ACLU of N.M.*, 2008-NMSC-045, ¶ 9 n.1. *Lopez*, 2024-NMCA-055, ¶¶ 26-30 (Bustamante, J., specially concurring). They criticize the footnote for relying on out-of-state law that has since been overturned and argue that those origins place the Statutory Standing Rule on shaky ground, requiring us to "overrule" the footnote and the cases that rely on it. *See id.* In contrast, Petitioners argue that the Statutory Standing Rule developed after this Court decided *Chavez*, 1985-NMSC-114. Paired with the recent amendment to Rule 1-017 clarifying the requirements of WDA PRs, Petitioners argue that the Rule analytically superseded the holding in *Chavez* that failure to appoint a PR is *not* a jurisdictional defect. 1985-NMSC-114, ¶ 11.

{13}   We do not find merit in either argument. Contrary to the timeline that the parties and Court of Appeals provide, the core principles underlying the Statutory Standing Rule long predate the footnote in *ACLU of N.M.*. *See Ickes v. Brimhall*, 1938-NMSC-036, ¶ 12, 42 N.M. 412, 79 P.2d 942 (observing in the context of the WDA that "Where a statute gives the cause of action, and designates the persons who may sue, they alone are authorized to bring suit." (internal quotation marks and citation omitted)); *see also Heckathorn v. Heckathorn*, 1967-NMSC-017, ¶ 11, 77 N.M. 369, 423 P.2d 410 (holding that satisfying the statutory residency period ahead of instituting a divorce proceeding was a "necessary jurisdictional prerequisite," though not expressly referencing standing); *Prot. & Advoc. Sys., Inc.*, 1999-NMCA-

122, ¶ 21 ("[S]tanding is governed by specific statutory language."). While it may have recently solidified in cases like *Johnston* and *Phoenix Funding*, it was not conjured from thin air as the Court of Appeals' concurrence and Lopez suggest. Nor, as Respondent suggests, did the Statutory Standing Rule's development "analytically supersede" earlier court precedent. As we explain, the Statutory Standing Rule is fully reconcilable with the holding of *Chavez* based on the plain language of the WDA and Rule 1-017.

{14}     Nor do we find merit in the suggestion that the Statutory Sanding Rule, as a tool for assessing a court's jurisdiction, should be forgone in favor of the analysis put forth in *Sundance Mech. & Util. Corp. v. Atlas*, 1990-NMSC-031, ¶ 23, 109 N.M. 683, 789 P.2d 1250. *See also Lopez*, 2024-NMCA-055, ¶¶ 31-34 (Bustamante, J., specially concurring). In *Sundance*, homeowners challenged the judgment of the district court in favor of a contractor on the grounds that the contractor failed to state a claim under the controlling statute and, therefore, the district court lacked jurisdiction to enter the judgment. 1990-NMSC-031, ¶¶ 10-11. The Court rejected that argument and concluded that failure to state a claim is not a jurisdictional defect "since it would make jurisdiction turn on the underlying validity *vel non* of a claim— the very question to be determined by the court in the exercise of its jurisdiction." *Id*. ¶ 15. That is, "the jurisdiction of a district court does not depend on how the court

decides a contested issue submitted to it." *Id*. Here, the Court of Appeals' concurrence argues that the same logic could apply to statutory standing. *See Lopez,* 2024-NMCA-055, ¶ 34 (Bustamante, J., specially concurring).

{15} However, the Court in *Sundance* did not address standing, nor does the concurrence in *Lopez* address the important and meaningful differences between standing and failure to state a claim, the latter requiring a judgment on the merits. *See Sundance*, 1990-NMSC-031, ¶¶ 15-16, 23. Rather, the reasoning in *Sundance* is more akin to the zone of interests analysis, which, as we have stated, is distinct from a standing analysis. And ultimately the *Lopez* concurrence overlooks the core reasoning of the Statutory Standing Rule: that where the Legislature confers jurisdiction via a statute, it may condition courts' exercise of that jurisdiction on the plaintiff satisfying enumerated preconditions to secure standing. We now turn to whether the WDA falls within that category of action and what conditions it imposes on a plaintiff.

**B.     The WDA Creates a Statutory Cause of Action**

{16} The Court of Appeals assumed, without analyzing, that the WDA created a statutory cause of action. This question is critical, however, because application of the Statutory Standing Rule to the WDA requires, first, that the WDA created a new cause of action that did not exist at common law. *See Johnston*, 2016-NMSC-013, ¶

10 (declining to apply the Statutory Standing Rule where the cause of action was codified by but not created by statute). If we were to conclude that the WDA *did not* create a statutory cause of action, then standing would not be a jurisdictional issue in this case and prudential standing considerations, like those employed by the Court of Appeals, would control. *See Prot. & Advoc. Sys., Inc.*, 1999-NMCA-122, ¶ 19.

{17} We hold that by establishing a cause of action for wrongful death and a right to recovery for statutory beneficiaries—neither of which existed at common law— the WDA creates a statutory cause of action subject to the Statutory Standing Rule. Because this question has been a source of confusion for courts since the early days of the WDA, we take this opportunity to explain our reasoning and offer clarity.

{18} New Mexico courts, including this Court, have been inconsistent in their characterization of the WDA, oscillating between interpreting the WDA as a statute that creates a new action and accompanying rights and one that merely transmits the *decedent's* rights to the PR. Whether the WDA creates new claims or merely lifts a common-law bar to claims, empowering the PR to pursue an action in tort despite the death of the injured party, has been an ongoing analytical struggle with little clarity. For instance, in 1936 this Court explained that:

> [the WDA] does not, as is often supposed, create a new cause of action. It transmits to the [PR] a cause of action when the injured person would have had one had death not ensued. In other words, the cause of action does not abate by reason of the death of the person injured.

12

*Hogsett v. Hanna*, 1936-NMSC-063, ¶ 9, 41 N.M. 22, 63 P.2d 540 (citations omitted); *see also Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 7, 315 P.3d 298 ("Since the early days of statehood, New Mexico courts have characterized the Act as a statute that transmits the decedent's rights to file a claim to the representative of the wrongful death estate."). Still, the Court in *Hogsett* acknowledged that the purpose of the WDA was to create a means to hold negligent actors liable even where the injured party dies, where historically the tortfeasor would be relieved of liability upon the death of the plaintiff. 1936-NMSC-063, ¶ 12 ("A careful reading of the sections under consideration suggests that the first thought of the [L]egislature was to create a cause of action against a culpable party. . . . It did not intend to relieve the tort feasor from liability in any event." (internal quotation marks and citation omitted)). In that way, the Court understood the WDA as doing more than simply preserving recovery—the Act also establishes a new manner of deterrence and accountability that did not exist before. More recently, the Court reiterated that interpretation, observing that "New Mexico's WDA was intended to *replace* the common-law rule barring recovery in cases of wrongful death so as to allow recovery and to *discourage and punish* negligent behavior by corporations." *Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 20, 373 P.3d 977 (emphasis added).

13

{19} Unfortunately, those holdings and observations are contradicted by caselaw clearly stating that any action for wrongful death is purely statutory as opposed to an act that merely lifts a bar to existing common-law claims. *See Stang v. Hertz Corp.*, 1969-NMCA-118, ¶ 9, 81 N.M. 69, 463 P.2d 45 ("The right to recover damages for wrongful death is entirely statutory."), *aff'd*, 1970-NMSC-048, ¶ 9, 81 N.M. 348, 467 P.2d 14; *Folz v. State*, 1990-NMSC-075, ¶ 26, 110 N.M. 457, 797 P.2d 246 ("[I]t must be remembered that a wrongful death action, as a statutory action, is *sui generis*. Common law concepts, while informative, are not dispositive of statutory law."). Indeed, *Chavez*—the case upon which Lopez primarily relies— states that, "At common law there was no right of action for wrongful death. Any such right of action is purely statutory. The statutory authority for a death action in New Mexico may be found in the Wrongful Death Act." 1985-NMSC-114, ¶ 7 (citations omitted). This idea was reiterated in *Romero*: "Legislative enactment of the Wrongful Death Act *created a new cause of action* in derogation of the common law."1994-NMSC-031, ¶ 15 (emphasis added).

{20} At the core of this confusion is the question of whether the WDA is a survival statute, a wrongful death statute, or a hybrid of the two. Survival statutes preserve the actions that the decedent could have brought and, critically here, limit damages to those that the *decedent* could have recovered. Cindy Domingue-Hendrickson,

14

*Wrongful Death—New Mexico Adopts Hedonic Damages in the Context of Wrongful Death Actions: Sears v. Nissan (Romero v. Byers)*, 25 N.M. L. Rev. 385, 387-88 (1995). In contrast, wrongful death statutes create a cause of action that only arises at the decedent's passing and, in addition to harm to the decedent, takes into consideration harm to beneficiaries resulting from the death. *Id.* Some statutes combine aspects of survival and wrongful death statutes. *Id.* at 389.

{21} It is the plain language of the WDA that reveals its true nature as a hybrid statute. First, the WDA states that the tortfeasor shall be liable for wrongful acts resulting in death that the tortfeasor would have been liable for but-for the death. Section 41-2-1. That provision expresses its nature as a survival statute by limiting causes of action under the WDA to those that the decedent could have brought. However, the WDA right of recovery for harm to *beneficiaries* pulls the WDA out of the realm of pure survival and adds a component only found in wrongful death statutes, providing that the jury may "tak[e] into consideration the pecuniary injury resulting from the death to the surviving party entitled to the judgment." Section 41-2-3.

{22} The hybrid nature of the WDA is reflected in caselaw as well, as this Court explained in *Baca v. Baca*:

> The right to recover damages for the wrongful death of a person is entirely statutory. . . . While the wrongful death act was said in

15

[previous cases] to be a survival statute, it has actually been held to be one in survival only in the sense that the cause of action accrues at the date of the injury and does not create a new cause of action upon the death of the injured person. The problem here present, where the recovery is not for the benefit of the estate, although brought by the personal representative, but is for the benefit of certain named beneficiaries, injects a consideration not present in the usual survival statute.

1963-NMSC-043, ¶ 14, 71 N.M. 468, 379 P.2d 765 (citations omitted). The Court in *Baca* went on to discuss a 1961 amendment establishing that a WDA action accrues at the date of the decedent's *death* and does not exist as a claim prior to that death, "thereby suggesting the possibility that the [L]egislature considered the statute as not being one of survival." *Id.* ¶ 15.

{23}  The WDA clearly creates a statutory cause of action. A claim under the WDA accrues at the date of death and subjects the tortfeasor to liability for causing death that did not exist at common law. Further, the WDA creates an action to benefit statutory beneficiaries who had no means to recover for the wrongful death at common law. Although the vehicle for recovery is limited to those claims that the decedent could have brought, the fact remains that those actions died with the injured party at common law and the WDA confers a distinct action through which the beneficiaries may recover and the tortfeasor may be held accountable. Accordingly, we conclude that applying the Statutory Standing Rule is appropriate and now explain what the Rule and the plain language of the WDA require of PRs in order to

16

establish jurisdiction.

**C.** **The WDA Does Not Require a PR to Petition for Formal Appointment to Secure Standing and a Court to Exercise Jurisdiction**

{24}  When analyzing the requirements that the Legislature contemplated in order for a PR to have standing to bring a WDA action, we look first to the plain language of the statute. *Gandydancer*, 2019-NMSC-021, ¶ 13. "In addition to looking at the statutory language, we also consider the history and background of the statute." *Id.* (internal quotation marks and citation omitted).

{25}  Under the plain language of the WDA, the Legislature simply did not impose the formal appointment of a PR as a prerequisite to bringing a WDA claim. While the Legislature was clear that any WDA action shall be brought by the decedent's PR, the statute is silent as to formal appointment. Section 41-2-3. The basic requirements for WDA PRs are derived from two sources: the WDA itself and Rule 1-017(B), which was amended in 2014 to clarify the requirements for appointing a WDA PR. *See* Rule 1-017(B) comm. cmt. 2014 Amendment. As we explain, neither source imposes a requirement for formal appointment for the PR to have standing to bring a WDA claim.

17

## 1. The plain language of the WDA does not require a PR to petition for appointment to secure standing

{26} As originally enacted, the WDA empowered the statutory beneficiaries to bring the wrongful death action. *Estate of Lajeuenesse ex rel. Boswell v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-004, ¶ 11, 292 P.3d 485. However, the Legislature amended the WDA in 1891 to grant the PR "the sole right to pursue the action." *Id.* That section now provides that "[e]very action mentioned in Section 41-2-1 NMSA 1978 shall be brought by and in the name of the personal representative of the deceased person." Section 41-2-3.

{27} While the WDA is clear that a wrongful death action shall be brought by the PR, it does not include language requiring that the PR be appointed for that specific purpose. *See id.* As a result, prior to the 2014 amendment to Rule 1-017(B), courts broadly construed who may serve as a PR for purposes of a wrongful death action. *See Henkel v. Hood*, 1945-NMSC-006, ¶¶ 8, 11-12, 49 N.M. 45, 156 P.2d 790 (holding that the "community administrator" of the decedent's estate under Texas law could act as a PR under the WDA); *Torres v. Sierra*, 1976-NMCA-064, ¶¶ 16-17, 89 N.M. 441, 553 P.2d 721 (determining that an estate administrator "comes within the category of 'personal representative'" under the WDA (citations omitted)); *Oakey v. Tyson*, 2017-NMCA-078, ¶ 21, 404 P.3d 810 (acknowledging

18

the ambiguity in the WDA and holding that a probate PR could act as the PR for a WDA claim before the 2014 Rule 1-017(B) amendment).

{28}     Critical here, the text of the WDA also does not dictate *when* the PR must be appointed. Consequently, courts have long concluded that failure to secure appointment of a PR before bringing the suit was not a jurisdictional defect and did not render the complaint a nullity. *See Chavez*, 1985-NMSC-114, ¶ 15; *Martinez v. Segovia*, 2003-NMCA-023, ¶ 8, 133 N.M. 240, 62 P.3d 331. Instead, as this Court held in *Chavez*, where there was some defect in appointment, the proper remedy was substituting a duly appointed PR as the real party in interest under Rule 1-017(A) and relating back to the filing of the complaint under Rule 1-015(C) rather than dismissing. *Chavez*, 1985-NMSC-114, ¶¶ 11-14.

{29}     That flexibility has been facilitated by an enduring understanding of PRs as merely nominal parties who act for the benefit of the statutory beneficiaries. *Id.* ¶ 10. Indeed, the Court in *Chavez* rooted its holding in the longstanding idea that, "[i]t is merely 'incidental' that a 'personal representative' is named to bring a wrongful death action." *Id.* ¶ 8 (quoting *Henkel*, 1945-NMSC-006, ¶ 9). And because WDA PRs act as a sort of procedural placeholder for decedents, the interest of justice called for substitution and relation back rather than dismissal. *Id.* ¶¶ 8, 20.

{30}     We agree and reaffirm our holding in *Chavez*. While the WDA is clear that

actions for wrongful death "shall be brought by and in the name of the personal representative," nothing in the statute's language requires that the PR petition for formal appointment by a court prior to bringing claims under the WDA. Section 41-2-3. The Legislature simply did not impose a requirement that the PR petition for appointment or be court-appointed in order to have standing, and the Court will not read such language into the statute. *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 ("We will not read into a statute language which is not there." (internal quotation marks and citation omitted)).

{31}     Accordingly, we conclude that failure to petition for appointment as the WDA PR does not deprive a PR of standing under the text of the WDA, nor does it deprive a court of jurisdiction over a claim brought by a PR who has not petitioned for formal appointment. Where there is a defect in appointment, the proper remedy is to substitute a properly appointed PR as the real party in interest under Rule 1-017(A) and relate that substitution back to the filing of the complaint under Rule 1-015 where the requirements of those rules are satisfied.

**2.     Rule 1-017(B) does not require that a WDA PR petition for appointment to secure standing and for a court to exercise jurisdiction**

{32}     Like the text of the WDA, Rule 1-017(B) does not require that a PR be formally appointed to have standing and for a court to have jurisdiction over the WDA claim. In 2014, Rule 1-017 was amended to add Subsection B, which

specifically addresses the requirements of WDA PRs, providing:

> Wrongful death actions; personal representative. An action for wrongful death brought under Section 41-2-1 NMSA 1978 *shall be brought by the personal representative appointed by the district court for that purpose* under Section 41-2-3 NMSA 1978. A petition to appoint a personal representative may be brought *before* the wrongful death action is filed or *with* the wrongful death action itself.

Rule 1-017(B) (emphasis added).

{33}    Petitioners rely on the amendment to advance their argument that *Chavez* has been analytically superseded. They assert that the clarity the Rule provides regarding PR requirements under the WDA paired with the emergence of the Statutory Standing Rule functionally overrules *Chavez*'s holding. That assertion is not supported by the text of the Rule, its commentary, or the caselaw interpreting the amendment's impact on *Chavez*.

{34}    The Rule identifies two times at which appointment of a WDA PR may be achieved: (1) before the WDA action is filed or (2) upon filing the complaint itself. Rule 1-017(B). It does not, however, mandate that the appointment *shall* occur at one of those two points, and we decline to read such a mandate into the text of the Rule. Nor does it appear that the committee that proposed the enacted Rule contemplated such a mandate. Instead, the committee commentary includes a reference to *Chavez*, providing that, "Failure to appoint a personal representative before the filing of a wrongful death action is not a jurisdictional defect and, under

21

proper circumstances, may be accomplished after the action is filed. *See Chavez v. Regents of University of New Mexico*, 1985-NMSC-114." Rule 1-017(B) comm. cmt. 2014 Amendment.

{35} The only case to interpret the impact of the Rule 1-017(B) amendment concluded that our holding in *Chavez* still controls. *Oakey*, 2017-NMCA-078, ¶¶ 31-34. In *Oakey*, the Court of Appeals held that under pre-Rule 1-017(B) law, a probate PR had authority to bring and settle a claim under the WDA. *Id.* Although the Court of Appeals concluded that Rule 1-017(B) was inapplicable given the timing of the case, the court went on to observe that

> [e]ven if the law in effect . . . did require that a probate PR obtain a separate appointment as a WDA PR, the proper remedy for the "honest mistake" of failing to do so would be the ministerial act of appointing the probate PR as WDA PR (or appointing a different person as WDA PR, as the district court did here), effective as of the filing of the original complaint, and ratifying what had happened since, as in *Chavez*, 1985-NMSC-114, ¶¶ 11-20.

*Id.* ¶ 34.

{36} We agree with the Court of Appeals' conclusion in *Oakey*. Rule 1-017(B) articulates an administrative process for appointing a WDA PR; it provides functional clarity for practitioners where the WDA left room for confusion. The Rule does not, however, create standing requirements otherwise not imposed by the WDA itself. Rather, where the process laid out in Rule 1-017(B) for petitioning for and

22

securing appointment as the WDA PR breaks down—as it did in this case—the proper remedy is substituting a court-appointed PR as the real party in interest and relating that substitution back to the filing of the complaint where the requirements of Rule 1-015 and Rule 1-017(A) are satisfied.

## III.   CONCLUSION

{37}     The WDA is a statutory cause of action for which standing is a jurisdictional prerequisite. However, neither the text of the WDA nor the role of PRs in wrongful death actions supports the conclusion that a PR's failure to petition for formal appointment as the WDA PR at or before the time of filing the complaint deprives the PR of standing and a court of jurisdiction over the action. Accordingly, we affirm the Court of Appeals' reversal of the district court and hold that the proper remedy where there is a defect in appointment is substituting a court-appointed PR as the real party in interest and relating that substitution back to the filing of the complaint where the requirements of Rule 1-015 and Rule 1-017(A) are satisfied. We remand to the district court with instructions to review Lopez's motion for appointment as the WDA PR of Richard Paiz's wrongful death estate under those rules.

{38}     **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Chief Justice**

23

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**